EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Master Concrete Corp.<br>        Demandante<br><br>        v.<br><br>Fraya, S.E.<br>        Demandada–Peticionaria<br><br>Compañía de Fomento Recreativo<br>        Demandado de Coparte–Recurrida | Certiorari<br><br>2000 TSPR 179 |

Número del Caso: CC–1998–831

Fecha: 30/noviembre/2000

Tribunal de Circuito de Apelaciones:

Circuito Regional I

Juez Ponente:

Hon. Miguel A. Giménez Muñoz

Abogado de la Parte Peticionaria:

Lcdo. Francisco Jiménez Rosado

Abogados de la Parte Recurrida:

Lcdo. Claudio Aliff Ortiz
Lcda. Lourdes Méndez Méndez

Materia:

Cobro de Dinero

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Master Concrete Corp.

    Demandante

        vs.                 CC-1998-831       Certiorari

Fraya, S.E.
    Demandada-Recurrente

Comp. de Fomento Recreativo
    Demandado de Coparte
    Recurrida

Opinión del Tribunal emitida por el Juez Asociado señor Fuster Berlingeri.

San Juan, Puerto Rico, a 30 de noviembre de 2000.

Tenemos la ocasión para formular algunos preceptos doctrinales relativos a la figura del arrendamiento de obras.

**I.**

En 1992 Fraya, S.E. (Fraya) obtuvo la adjudicación de una subasta celebrada por la Compañía de Fomento Recreativo (Fomento) para la primera fase de las ampliaciones y mejoras a llevarse a cabo en el Parque Urbano de Loíza. El 6 de noviembre de 1992 Fraya y Fomento suscribieron el contrato correspondiente. Durante el 1994 Fraya, a su vez, suscribió sendas cesiones de

crédito[1] con varios subcontratistas, entre ellos Master Concrete Corp. (Master Concrete)[2], mediante las cuales acordaron que los subcontratistas cobrarían su acreencia de Fomento cuando éste desembolsase el diez por ciento (10%) que había retenido al realizar cada pago parcial a Fraya.

El 15 de junio de 1995 Master Concrete entabló una demanda en cobro de dinero contra Fraya, Fomento y Puerto Rican American Insurance Company (PRAICO), la fiadora de Fraya. Alegó que no le habían pagado el hormigón que dicha empresa había suplido para la obra referida.[3] El 7 de agosto de 1995 Fraya presentó una demanda de coparte contra Fomento reclamando $887,769 en concepto de dinero adeudado por trabajos realizados que aún no se le habían pagado, más los daños que alegadamente sufrió su crédito por la negativa de Fomento a pagar a los subcontratistas las cesiones de crédito correspondientes. Fomento no contestó la demanda y se le anotó la rebeldía. El 30 de agosto de 1996 el Tribunal de Instancia dictó sentencia y declaró sin lugar la demanda

---

[1] Este Tribunal, en IBEC v. Banco Comercial, 117 D.P.R. 371, 376 (1986), dijo que la figura de cesión de crédito ha sido descrita como "un negocio jurídico celebrado por el acreedor cedente con otra persona, cesionario, por virtud del cual aquél transmite a éste la titularidad del derecho de 'crédito cedido'. L. Diez-Picazo, Fundamentos del Derecho Civil Patrimonial, Madrid, Ed. Tecnos, 1979, Vol. I, pág. 789."

[2] Compañía contratada por Fraya para suplir el hormigón utilizado en la obra.

[3] Posteriormente Fomento le pagó a Master Concrete y el tribunal de instancia ordenó el archivo con perjuicio de la demanda.

contra coparte, por entender que Fraya no había demostrado que "la obra fue terminada y aceptada ni que la nómina y otros cargos fueron satisfechos".

Inconforme con el dictamen de instancia, Fraya recurrió al Tribunal de Circuito de Apelaciones. Dicho foro dictó una sentencia el 30 de junio de 1997 mediante la cual revocó la determinación del Tribunal de Instancia, y le ordenó a éste que determinase si Fraya había completado la obra y pagado la deuda relativa a la nómina, y si Fomento había aceptado la obra realizada.

En cumplimiento con dicha orden, el Tribunal de Primera Instancia determinó que según el testimonio del socio de Fraya, el cual no fue controvertido, Fraya terminó "todos los trabajos objeto del contrato celebrado con la Compañía de Fomento Recreativo". Concluyó, sin embargo, que no se había presentado evidencia de que la obra hubiese sido aceptada por Fomento; y que los documentos presentados para establecer el pago por Fraya de las nóminas, los materiales y otros gastos eran insuficientes para acreditarlo. Por tanto, declaró sin lugar la demanda contra coparte.

Fraya acudió otra vez al Tribunal de Circuito de Apelaciones y alegó, en esencia, que el Tribunal de Instancia había errado al determinar que los documentos sometidos no eran suficientes para concluir que la obra había sido aceptada y que Fraya había pagado las nóminas, materiales y otros gastos, según lo requería el contrato. El foro apelativo, mediante sentencia del 26 de agosto de 1998, confirmó el dictamen del foro de instancia, por entender que: "… de acuerdo al contrato suscrito entre las partes, Fraya, S.E. viene obligado a presentarle a Fomento la certificación requerida y establecer la aceptación de la obra y los pagos y gastos satisfechos."

El 30 de octubre de 1998, Fraya presentó una solicitud de revisión ante nos, en la que hizo los siguientes señalamientos de error:

1– Erró el Tribunal al apoyar su decisión en la ausencia de una aceptación de la obra por parte de Fomento.

2– Erró el Tribunal al implicar que la declaración jurada que sometió Fraya a la compañía afianzadora de que había cumplido con el pago de todo lo relacionado al proyecto no tiene validez ante Fomento.

3– Erró el Tribunal al entender que la carta referente a la segunda fase del proyecto implicaba que Fraya no había completado su obra y que por tal razón no había cumplido con los requisitos señalados.

El 18 de diciembre de 1998, a los fines de evaluar la solicitud de Certiorari presentada por Fraya, le concedimos término a la Compañía de Fomento Recreativo para que explicara por qué no se debía ordenar el pago de la cantidad reclamada por la parte peticionaria.

Considerada la respuesta de Fomento a la orden referida, el 23 de abril de 1999 expedimos el auto de Certiorari solicitado por Fraya. El 30 de agosto de 1999 la parte recurrente presentó su alegato. El 18 de noviembre de 1999, la parte recurrida presentó el suyo. Con el beneficio de ambas comparecencias, procedemos a resolver.

## II.

En esencia, nos toca determinar cuáles son las consecuencias jurídicas, para las partes en un contrato de arrendamiento de obras, de la conclusión sustancial de una obra. En particular, debemos resolver si una vez se termina sustancialmente una obra, la negativa del dueño a aceptarla debe repercutir en el derecho del contratista a que se le pague lo que se le adeude al momento. Veamos.

### A.

Mediante el contrato de arrendamiento de obras, una parte se obliga hacia la otra a ejecutar una obra a cambio de la contraprestación convenida. Art. 1434 del Código Civil, 31 L.P.R.A. sec. 4013. Este Tribunal ha definido el contrato de arrendamiento de obras "como esencialmente uno de trabajo, mediante el cual una de las partes se encarga de hacer una cosa para la otra, mediante un precio convenido entre ellos.(…) Ahora bien, no hay duda que el contrato de obra es uno de carácter consensual, bilateral, y oneroso cuyos elementos característicos son la obra a realizarse y el precio. (…)" (Citas omitidas) Constructora Bauzá v. García López, 129 D.P.R. 579 (1991). Al arrendamiento de obras se le ha llamado arrendamiento de industria, contrato de empresa, contrato de obra y más correctamente, según Diez Picazo, contrato de ejecución de obras. Ignacio Rubio San Román, La Responsabilidad Civil en la Construcción, Ed. Colex, 1987, pág. 55. La tendencia generalizada de la doctrina es a emancipar el contrato en cuestión del antiguo molde del arrendamiento, como en un sentido lo hace el propio Código Civil al apartarse

de la terminología de arrendador y arrendatario para denominar a las partes del contrato como el *dueño* y el *contratista*. Miguel A. Del Arco y Manuel Pons, Derecho de la Construcción, Ed. Hesperia, 1980, pág. 20.

El dueño de la obra tiene la obligación fundamental de pagar el precio de ésta en la forma, cuantía y tiempo convenido. Manuel Albaladejo, Derecho Civil II, Derecho de Obligaciones Vol. II, Los contratos en particular y las obligaciones no contractuales, 10ma edición, 1997, Bosch, Barcelona, págs. 286 y ss. De no haber pacto o costumbre en contrario, el pago deberá hacerse al momento de la entrega de la obra. Artículo 1490 del Código Civil, 31 L.P.R.A. sec. 4132. El contratista, por su lado, tiene la obligación de realizar y entregar la obra según lo pactado. "El contratista viene obligado a ejecutar la obra conforme a lo convenido en el contrato, a las reglas del arte de la construcción y a los usos o reglas profesionales." Del Arco y Pons, supra, pág. 40. Si el contratista incumple con su deber, el dueño tiene el derecho a pedir la resolución del contrato aun hecha la obra, si resulta ser tan imperfecta que el dueño se ve impedido de usarla para el fin perseguido. Véase Albaladejo, supra, págs. 286-289.

Una vez perfeccionado un contrato de arrendamiento de obras, como en todo tipo de contrato, las partes están obligadas por lo expresamente pactado y, de incurrir en dolo, negligencia o morosidad en el cumplimiento de sus obligaciones, responden por los daños y perjuicios causados. Arts. 1210 y 1054 del Código Civil, 31 L.P.R.A. secs. 3375 y 3018. Así mismo, si los términos del contrato son claros y no dejan dudas sobre la intención de los contratantes, se observará su sentido literal; de lo contrario prevalecerá la intención evidente de los contratantes. Art. 1233 del Código Civil, 31 L.P.R.A. sec. 3471. Ante el incumplimiento de la otra parte, el perjudicado puede: exigir el cumplimiento de la obligación en la forma específicamente debida o la resolución del mismo[4]; solicitar el cumplimiento mediante la obtención del equivalente económico de la prestación debida y, a la vez, pedir la indemnización de daños y perjuicios resultantes de la repercusión del incumplimiento en su patrimonio. José Puig Brutau, Fundamentos de Derecho

---

[4] En el supuesto de incumplimiento esencial, de acuerdo al art. 1077 del Código Civil, 31 L.P.R.A. sec. 3052. Véase Constructora Bauzá v. García López, 129 D.P.R. 579 (1991).

<u>Civil</u>, Tomo I, Vol. II, 4ta ed., Bosch, Barcelona, 1988, págs. 439-436. <u>S.M.C.</u> <u>Const., Inc.</u> v. <u>Master Concrete Corp.</u>, res. del 21 de mayo de 1997, 143 D.P.R. ____ (1997), 97 JTS 71. El cumplimiento defectuoso de la obligación por parte del contratista, no obstante ser la obra útil para su destino, le permite al dueño esgrimir la *exceptio non rite adimpleti contractus* y pedir una reducción del precio proporcional a los vicios. De Arco y Pons, <u>supra</u>, págs. 41-43.

**B.**

El contrato tiene fuerza de ley entre las partes, por lo que se debe cumplir según lo pactado. Art. 1044 del Código Civil, 31 L.P.R.A. sec. 2994. Para determinar si las partes cumplieron con las obligaciones pactadas en el caso de autos, debemos comenzar por establecer concretamente a qué se obligaron.

Fraya y Fomento suscribieron un "Contrato para la Construcción de Ampliación y Mejoras al Estadio Urbano de Loíza, P.R.". En el mismo, Fraya se obligó a suplir todos los materiales y la mano de obra requeridos para ese proyecto

> "de acuerdo a las instrucciones, especificaciones técnicas, Condiciones Generales y Suplementarias, planos, addendums, acuerdos de la reunión pre-subasta y carta de propuesta de negociación aceptada, con fecha del 29 de septiembre de 1992, la cual se hace formar parte de este contrato, por la cantidad de **un millón doscientos ochenta y seis mil dólares ($1,286,000.00)**".

Las partes también acordaron que se harían pagos parciales durante el progreso de la obra en proporción al material suministrado y a la mano de obra ejecutada, de los cuales se retendría el diez por ciento (10%) de cada pago hasta la terminación total de la obra y su aceptación final. La aceptación final del proyecto estaría sujeta al cumplimiento de todos los requisitos según provistos en las **Condiciones Generales** y demás documentos del contrato. Específicamente se pactó que Fomento no emitiría el pago final hasta que Fraya certificara "que la nómina y todos los descuentos legales inherentes a ella han sido satisfechos y que no hay deuda pendiente por este concepto."

Las **Condiciones Generales** referidas incorporadas al contrato en cuestión surgen del documento modelo titulado *"General Conditions of the Contract for Construction"* redactado por el *American Institute of Architects* (AIA), en el cual se especifica, entre otras cosas, el procedimiento para

solicitar pagos parciales y el pago final en los arrendamientos de obras.[5] Según este documento, el arquitecto es el representante del dueño en la obra y tiene el deber de inspeccionarla. Asimismo, tiene autoridad para rechazar trabajos defectuosos y para determinar cuánto se le debe al contratista. El arquitecto también tiene la facultad para aprobar las propuestas del contratista, para autorizar las órdenes de cambio y para determinar las fechas de conclusión sustancial y conclusión final de la obra.

En el Artículo 8 del documento referido se define la fecha de **conclusión sustancial** ("substantial completion") como el momento en el cual, según certificado por el arquitecto, la obra está lo suficientemente completa como para que el dueño la pueda ocupar o utilizar para el fin perseguido. **El Artículo 9 dispone que una vez el contratista considera que la obra se encuentra en condiciones de ser aceptada por el dueño, debe preparar un listado de las cosas que quedan por hacer**. Si luego de una inspección el arquitecto determina que la obra se completó sustancialmente, entonces éste debe preparar un Certificado de Conclusión Sustancial de la obra en el cual establecerá la fecha de la referida conclusión sustancial; las respectivas responsabilidades del dueño y del contratista en cuanto a la vigilancia de la obra y su mantenimiento; y el tiempo que tiene el contratista para terminar lo que le falta por realizar. Esta certificación del arquitecto se le someterá al dueño de la obra y al contratista para que la aprueben por escrito.

Es menester señalar que en esta etapa del desarrollo de la obra, **en la cual ya existe la conclusión sustancial de ésta**, el dueño de la misma debe hacer el pago correspondiente, conforme a lo realizado por el contratista. Así lo dispone expresamente las Condiciones Generales del contrato, art. 9.8.2.:

---

[5] Los términos y condiciones de este documento han sido reconocidos en la industria de la construcción como el marco que sirve de guía en este tipo de contrato. La mayoría de los proyectos utilizan este documento, cuya primera versión fue publicada en 1911. El uso generalizado de este documento ha dado lugar a que los tribunales hayan tenido la oportunidad de interpretar sus disposiciones en numerosas ocasiones. "This document is the cornerstone of the construction contract; its significance in the construction industry is comparable to that of the Uniform Commercial Code in commercial sales transactions." Stein 1 Construction Law Sec.3.06[1] (1998).

"upon substantial completion of the work. . . and upon aplication by the Contractor. . . the Owner shall make payment, reflecting adjustment in retainage, if any, for such work. . ."

Una vez superada la referida etapa de la conclusión sustancial de la obra, el contratista debe preparar una Solicitud de Pago Final, y el arquitecto, luego de realizar la inspección final, debe emitir una Certificación de Pago Final. Una vez se le someten estos documentos, el dueño debe realizar el pago final.

Las Condiciones Generales del contrato además disponen, en el Artículo 9, que ni el pago final ni las sumas retenidas serán exigibles hasta que el contratista le entregue al arquitecto lo siguiente: una declaración jurada de que se han pagado las nóminas y materiales de la obra; el consentimiento de la compañía aseguradora para que se efectúe el pago final; y, si así lo requiere el dueño, cualquier información que establezca que se ha cumplido con otras obligaciones relativas a la obra. Esta disposición del referido Artículo 9 equivale a la disposición que existía en el contrato suscrito entre Fraya y Fomento, mencionado antes, que exigía para el pago final que Fraya certificase que la nómina y todos los descuentos legales inherentes a la misma se habían pagado. El Artículo 9 de las Condiciones Generales sólo añadía aquí la manera específica en que debía realizarse dicha certificación.

La conclusión final de la obra, de acuerdo a las Condiciones Generales, ocurre cuando la obra está terminada por completo y el arquitecto ha emitido un Certificado de Pago Final a tales efectos. En este momento el contratista tiene derecho a que el dueño le pague todas las sumas retenidas para corregir deficiencias.[6]

Señalado ya cómo se logra la conclusión sustancial de una obra según los documentos contractuales en cuestión, debemos ahora referirnos a las consecuencias que conlleva llegar a esa etapa del contrato según los documentos aludidos. El logro de la conclusión sustancial de una obra tiene

---

[6] Foster y otros, *Construction and Design Law* § 18.8 (1991), señalan al respecto: "[…] Therefore, final completion is of significance to the contractor only insofar as it allows the contractor to recover payment for the balance of the contract sum represented by the punch list items. The definition of substantial completion implies that these items will be insignificant in relation to the work, and that compensation for them represents a minor amount of the contract sum…."

efectos jurídicos significativos entre las partes. Cuando la obra se concluye sustancialmente, el contratista tiene derecho a que se le pague el balance de lo adeudado según el contrato, menos las sumas retenidas para corregir las deficiencias que la obra pueda tener. Además, hay otros efectos: termina el periodo del contrato; comienza la vigencia de las garantías a favor del dueño; el dueño corre entonces con los riesgos por la pérdida de la obra y tiene la responsabilidad de darle mantenimiento; el peso para probar defectos en la obra lo tiene el dueño; y la resolución del contrato ya no está disponible como remedio. Véase Foster y otros, Construction and Design Law, § 18.1 (1991). Para que entren en vigor los aludidos efectos jurídicos de la conclusión sustancial de la obra, **no es necesario que ésta haya sido aceptada**, ya que dicha conclusión sustancial constituye una etapa previa a la de la conclusión final:

> In most cases, the AIA documents work well to protect the parties´ interests. Upon substantial completion, the contractor is paid, virtually in full, or at least retainage is reduced. The owner is entitled to withhold enough money to complete the punch list. The architect certifies the punch list, so the parties have some certainty about the work that remains to be done. Completion of the punch list is followed by final inspection, which is followed by final payments. Foster y otros, supra, sec. 18.8(a).

Los tribunales norteamericanos han desarrollado la doctrina del cumplimiento sustancial para determinar los remedios disponibles a las partes cuando ocurre algún incumplimiento del contrato de arrendamiento de obras. Conforme a dicha doctrina, existe cumplimiento sustancial cuando se han ejecutado los elementos esenciales que son necesarios para que pueda realizarse el uso destinado de la obra, de manera tal que hay una gran aproximación al cumplimiento final. Según la doctrina referida, en tal situación es menester evitar el enriquecimiento injusto que existiría a favor del dueño que recibe una obra sustancialmente terminada pero se rehusa a pagar lo que adeuda de ella. La doctrina referida preceptúa que, como el contratista ha incumplido al no terminar la obra completamente a satisfacción del dueño, sólo tiene derecho al valor que la obra realizada tenga para el dueño. Por lo general, se determina que hubo cumplimiento sustancial a menos que el trabajo realizado sea completamente inservible para el fin perseguido. El criterio mayormente utilizado para determinar si hubo cumplimiento sustancial es el de la proporción del costo de completar la obra versus el costo total de ésta. El contratista que cumple sustancialmente con lo pactado tiene

derecho al pago final menos el costo de reparar las imperfecciones de la obra. Véase Foster y otros, <u>supra</u>, sec. 18.1(a).

La referida doctrina del cumplimiento sustancial, desarrollada en jurisdicciones norteamericanas como una norma de equidad, es análoga a lo que se preceptúa en la actualidad en el derecho patrio. El Código Civil de Puerto Rico, como el de España, no tienen disposiciones expresas que ordenen concretamente qué debe hacerse en casos como el de autos. Sin embargo, en la doctrina civilista, entre los principios generales de las obligaciones, hay figuras que, aplicadas al asunto, conducen a efectos similares a los de la doctrina norteamericana aludida, por lo que no necesitamos ampararnos necesariamente en ésta para atender los casos pertinentes.[7] Nos referimos, por ejemplo, a la defensa que puede invocar un demandado en los casos de cumplimiento defectuoso de las obligaciones bilaterales, conocida como la *exceptio non rite adimpleti contractus,* mencionada anteriormente, la cual puede ser invocada por el dueño de una obra ante la pretensión del contratista de que se le pague el precio total de ésta sin que se haya completado finalmente. En la doctrina civilista, el principio de equidad conocido como la *exceptio non adimpleti contractus*, provee una defensa que permite la **<u>desestimación</u>** de la acción de reclamación del pago pendiente, en casos en los cuales existe un **<u>incumplimiento esencial</u>** de parte del reclamante que afecta sustancialmente la reciprocidad de las obligaciones. Este principio se ha distinguido de su corolario, la *exceptio non rite adimpleti contractus.* Esta puede ser invocada por el demandado en casos de **<u>cumplimiento simplemente imperfecto</u>**, y en virtud de ella, procede sólo que se **<u>reduzca</u>** el importe de lo pactado en función del valor del costo de las obras que sean necesarias para lograr el cumplimiento perfecto del contrato. Estima la doctrina civilista, recogida en una sentencia del Tribunal Supremo de España, que en estos casos sería contrario al principio de la buena fe facultar a un demandado a retener el pago del resto total de la prestación que pactó con el contratista, cuando con la retención de sólo una pequeña parte de tal cantidad el dueño puede ser resarcido por las imperfecciones de la obra.

---

[7] Sobre la adopción de instituciones jurídicas de otros sistemas jurídicos, véase <u>Borges v. El Registrador</u>, 91 D.P.R. 112, 120 (1964) y <u>Dalmau v. Hernández Saldaña</u>, 103 D.P.R. 487, 491 (1975).

En resumen, pues, es claro que en la doctrina actual del derecho civil nuestro, una vez se ha determinado que la obra fue sustancialmente completada, la aplicación de la defensa referida resultaría al igual que en la doctrina americana del cumplimiento sustancial, en una "disminución proporcional del precio en razón a las deformidades o vicios, no obstante ser la obra útil para su destino." Del Arco y Pons, supra, pág. 42.

**III.**

Pasemos a dilucidar los asuntos concretos ante nos, a la luz de las disposiciones contractuales pertinentes.[8]

Para poder examinar los señalamientos de error de Fraya, debemos determinar en qué etapa de la ejecución del contrato de arrendamiento de obras se encontraban las partes. A tales efectos, ¿hubo una conclusión sustancial de la obra en el caso de autos? Es menester comenzar por establecer que el Tribunal de Instancia concluyó "que Fraya terminó los trabajos de construcción objeto del contrato."[9] Por otro lado, en el documento titulado "Acuerdo y Estipulaciones para Trámite de Pago de Cesiones", suscrito por Fraya y el Director de Fomento un mes luego de que Fraya entablara la demanda contra coparte, en el párrafo número seis se dispone lo siguiente:

> No deberá bajo ninguna circunstancia, entenderse esta producción de pago, como la aceptación final del proyecto. Por el contrario, lo que hemos considerado es, según expresamos, evitar costos adicionales por motivos de reclamaciones judiciales y en consideración además a que, aunque no hemos terminado la relación contractual, según el documento suscrito el 6 de noviembre de 1992, **entendemos que se ha completado una parte sustancial del proyecto por el cual se contrató a FRAYA, S.E., restando solamente la instalación adecuada de una conección (sic) del servicio fluvial.** (Enfasis nuestro).[10]

En autos obra además una minuta de una reunión en la que estuvieron presentes los representantes de Fraya y Fomento y los inspectores utilizados

---

[8] En el caso de autos, Fomento se negó a pagarle a Fraya lo que le adeudaba por la construcción de la obra en cuestión, pero al ser demandado en cobro de dinero no invocó como defensa la exceptio non rite adimpleti contractus. Conforme a los hechos concretos de este caso, resolvemos conforme a las disposiciones contractuales mencionadas antes, en particular los arts. 8 y 9 de las Condiciones Generales.

[9] Página 4 de la Sentencia del Tribunal de Primera Instancia del 9 de marzo de 1998.

[10] De la última certificación parcial aprobada (Certificación Núm. 16) surge que la mayoría de los trabajos fueron completados un 100%.

por Fomento en la obra referida, en la cual se estableció la fecha de conclusión sustancial, y que Fomento proveería la vigilancia desde ese momento en adelante.  Se dispuso, además, que el contratista prepararía la solicitud de inspección final del proyecto. Aunque esta minuta no es una Certificación de Conclusión Sustancial, el contenido de la misma es mayormente lo que requieren las **Condiciones Generales** para que se emita dicha certificación. Estos documentos apoyan la determinación no controvertida del foro de instancia de que la obra fue terminada por Fraya, y nos permiten concluir que las partes habían llegado a la etapa de conclusión sustancial del contrato.  Es cierto que en este caso no se siguió el trámite sobre el particular estrictamente como lo establecen las **Condiciones Generales**, en vista de que no consta la solicitud de inspección final preparada por el contratista.  Sin embargo, surge de los autos que la obra fue utilizada por el dueño posteriormente, ya que hubo una subasta para la construcción de la segunda fase del proyecto. La obra realizada por Fraya, evidentemente, fue utilizada para el fin perseguido.                                                      No

puede alegar Fomento por un lado que la obra no se terminó, negándose a expedir la Certificación de Conclusión Sustancial, y por el otro lado continuar con la segunda fase del proyecto, beneficiándose del trabajo no retribuido del contratista de la primera fase.

Tanto el Tribunal de Primera Instancia como el Tribunal de Circuito de Apelaciones utilizaron como fundamento para la desestimación de la demanda de autos el hecho de que Fraya no estableció que Fomento hubiese aceptado la obra.[11] Sobre este aspecto debemos subrayar que aunque Fomento niega haber aceptado la obra, **sus actos demuestran todo lo contrario**: aceptó la responsabilidad de la seguridad del parque una vez determinó que se había concluido sustancialmente la obra; contrató la construcción de la segunda fase; admitió expresamente que sólo faltaba la instalación adecuada de una conexión de servicio pluvial; y no contestó la demanda en cobro de lo adeudado ni compareció a la vista en rebeldía para negar su deber de pagar o esgrimir defensa alguna contra las alegaciones de Fraya. Fomento se ha negado a aceptar la obra "oficialmente", aunque para todos los efectos prácticos la aceptó hace mucho tiempo. Sobre la recepción tácita de una obra, Del Arco y Pons han expresado lo siguiente:

> La doctrina científica suele admitir la recepción tácita, que resulta de hechos y actitudes que suponen, necesariamente, la voluntad de aceptar la obra.
>
> Se mencionan como supuestos de recepción tácita, los siguientes:
>
> a.- La toma de posesión por el dueño, sin formular protesta ni reserva alguna.
>
> **b.- La utilización de las obras.**
>
> c.- El pago del precio, cuando se verifique sin reservas. (Énfasis nuestro). Del Arco y Pons, <u>supra</u>, pág. 297.

---

[11] El Artículo 1490 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 4131, dispone que:

> "Cuando se conviniere que la obra se ha de hacer a satisfacción del propietario, se entiende reservada la aprobación, a falta de conformidad, al juicio pericial correspondiente."

La disposición referida no excluye que la aprobación o conformidad del propietario se exprese de manera tácita, según se discute más adelante en el texto de esta opinión. Véase, además, la sentencia del Tribunal Supremo de España del 28 de junio de 1958 sobre la aprobación tácita de una obra por su dueño.

Fomento, al utilizar las obras, dio a entender tácitamente que la aceptaba. No puede negar esa realidad utilizando como escudo la ausencia de documentos que le correspondía emitir al arquitecto que era su representante. Tampoco podía dejar a Fraya indefinidamente en un limbo contractual.[12] Fomento no realizó acto afirmativo alguno para rechazar la obra, pero sí para aceptarla, aunque no realizó el trámite administrativo para oficializarlo. No podemos penalizar a Fraya por la inactividad de Fomento en este aspecto.

En el caso de autos, como el desembolso del diez por ciento (10%) retenido con cada pago parcial estaba sujeto a la terminación total de la obra y su aceptación final según los términos del contrato, el acreditar oficialmente la aceptación de la obra era pertinente sólo para determinar si procedía el pago de la partida retenida. Parte de ese dinero retenido ya había sido desembolsado mediante el contrato suscrito entre Fraya y Fomento titulado "Acuerdo y Estipulaciones para Trámite de Pago de Cesiones", al que nos referimos anteriormente. Como es nuestro criterio que en este caso hubo una

---

[12] Aunque en autos obran cartas de los inspectores de Fomento señalando ciertas deficiencias, todas con excepción de una son posteriores a la demanda de coparte de Fraya contra Fomento. La existencia de deficiencias no impide el derecho de Fraya a cobrar, aunque tiene el efecto de disminuir la cuantía debida. La conclusión sustancial o final de una obra no equivale a una obra sin defectos. "…[L]iteral performance in every detail is unlikely." Foster y otros, supra, sec. 18.1(a), citando a Watson Lumber Co. v. Guennewig, 226 N.E.2d 270, 280 (1967). También encontramos sendas declaraciones juradas de la arquitecta de Fomento y del inspector, posteriores a la demanda de autos, en las que declaran que Fraya no ha finalizado su contrato en el referido parque. Estas declaraciones no fueron presentadas ante el foro de instancia, sino que las trajo la parte recurrida en su oposición. En Continental Ins. Co. v. Isleta Marina, 106 D.P.R. 809 (1978), dispusimos: "Y con referencia a una parte demandada en rebeldía--que ha comparecido previamente--le cobija el derecho a conocer del señalamiento, asistir a la vista, contrainterrogar los testigos de la parte demandante, impugnar la cuantía y apelar la sentencia. No renuncia a las defensas de falta de jurisdicción ni de que la demanda no aduce hechos constitutivos de una causa de acción en favor del reclamante." Al estar en rebeldía por no haber contestado la demanda, Fomento estaba impedido de traer evidencia a menos que fuese para contrainterrogar testigos (lo cual no hizo) o impugnar la cuantía reclamada. No podemos considerar esta evidencia, a la vez que estamos conscientes de que no guarda relación con las actuaciones de Fomento. ¿Por qué no contestó la demanda o presentó esta evidencia en la vista celebrada ante el Tribunal?

aceptación tácita de la obra por Fomento, concluimos que se le debe a Fraya aquella parte de los fondos pactados no pagados **que no se necesiten para corregir deficiencias en la obra**, conforme a lo dispuesto en el art. 9.8.2 de las Condiciones Generales del contrato.  Erraron, por lo tanto, los tribunales a quo al fundamentar su decisión en la ausencia de aceptación de la obra por parte de Fomento.  Se cometió el primer error.

## IV.

Habiendo resuelto que Fraya terminó la obra sustancialmente, y que ésta fue aceptada tácitamente por Fomento, sólo nos resta determinar si los documentos sometidos por Fraya eran suficientes para establecer que la nómina y todos los descuentos legales inherentes a la obra habían sido satisfechos. Veamos.

Del expediente surge una declaración jurada del representante de Fraya, del 1 de mayo de 1995, dirigida a PRAICO, su aseguradora, mediante la cual testimonió que la obra en cuestión había sido definitivamente terminada y que se habían pagado todas las cuentas relativas a materiales.  También surge una carta de PRAICO del 11 de mayo de 1995, por medio de la cual autorizaba a Fomento a que le pagara el dinero retenido al contratista, ya que éste había certificado que había pagado la nómina, **por lo que la aseguradora se hacía responsable de cualquier reclamación que surgiera a tales efectos de acuerdo al contrato de fianza suscrito entre las partes.**[13]  Estos documentos son precisamente los que las **Condiciones Generales** referidas antes requieren que se sometan al dueño de la obra antes del pago final.  Estos requisitos existen para prevenir que antes de que el dueño emita el pago final, el contratista

---

[13]     Además, surge una factura de pago de primas al Fondo del Seguro del Estado. Aunque esto no se requiere específicamente en el contrato entre las partes, responde a la siguiente disposición de la Ley del Fondo del Seguro del Estado: "En cada contrato para una obra pública insular o municipal se incluirá en el costo de la obra el montante por primas de seguros de obreros que haya de emplearse en dicha obra y por el Secretario de Transportación y Obras Públicas, el tesorero municipal, o por el funcionario que corresponda del departamento del gobierno, junta, comisión, autoridad, instrumentalidad, corporación pública, negociado o agencia a cuyo cargo esté la obra, se retendrá al contratista esa suma para ser satisfecha al Fondo del Seguro del Estado." 11 L.P.R.A. sec. 2.

no le adeude nada a los trabajadores y a los materialistas, ya que una vez liquidado ese pago, éstos pierden la garantía del art. 1489[14], 31 L.P.R.A. sec. 4130.

El contrato suscrito entre las partes no especifica de qué manera Fraya debía certificar que la nómina y todos los descuentos legales inherentes a la misma habían sido satisfechos. Por lo tanto, Fraya cumplió debidamente con lo acordado al certificar lo requerido de acuerdo a la manera dispuesta en las **Condiciones Generales** que están incorporadas al contrato. Nótese que al hacer la acreditación referida de acuerdo a las **Condiciones Generales**, se ofrece una doble garantía de que se ha cumplido con la exigencia del contrato, pues si resulta que no es veraz lo acreditado por el contratista, la fiadora responde por ello. En vista de lo anterior, es evidente que el tribunal de instancia erró al determinar que los documentos referidos no constituían "una certificación de Fraya sobre el pago de los salarios de los trabajadores y de las facturas de los materialistas", y al concluir que la certificación se la tenía que presentar Fraya directamente a Fomento. Por las mismas razones, también erró el foro apelativo al confirmar el dictamen de instancia. Se cometió el segundo error señalado por la peticionaria.

**V.**

En su tercer señalamiento de error, la parte peticionaria hace alusión al hecho de que el Tribunal de Circuito de Apelaciones entendió que la carta de adjudicación de la segunda fase del proyecto que presentó Fraya "mas que la obra fuera terminada y aceptada por Fomento, infiere que fue otra persona la que completó la obra." La carta, que en realidad es una notificación de adjudicación de subasta, dirigida a Fraya como participante de la subasta de la segunda fase, sólo nos permite concluir que Fomento continuó con la segunda fase del proyecto sin liquidar la primera fase. Si se tratase de que la subasta se hizo porque Fomento buscaba otra persona que terminase la obra, no le

---

[14] "Los que ponen su trabajo y materiales en una obra ajustada alzadamente por el contratista no tienen acción contra el dueño de ella sino hasta la cantidad que éste adeude a aquél cuando se hace la reclamación."

hubiese permitido a Fraya licitar. Este error también lo cometió el foro recurrido.[15]

### IV.

En resumen, pues, concluímos que bajo los términos del contrato suscrito por las partes, una vez alcanzada la conclusión sustancial de una obra, el contratista tiene derecho al pago del precio de la obra menos las sumas retenidas para corregir las deficiencias. En este caso, Fraya completó sustancialmente la obra objeto del contrato, y la obra fue utilizada por Fomento para el fin perseguido, sin pagar lo debido. La negativa arbitraria por parte del dueño a aceptar oficialmente la obra no puede utilizarse como escudo para evadir la responsabilidad de pagar. Estamos conscientes de que, en casos como el de autos en el cual está involucrado el uso de fondos públicos, las agencias gubernamentales deben actuar rigurosamente para evitar la mala administración y el derroche. También tienen la responsabilidad de actuar diligentemente y de buena fe con respecto a las obligaciones que contraen.

Por los fundamentos antes expuestos, procede que se dicte sentencia para revocar la sentencia del Tribunal de Circuito de Apelaciones del 26 de agosto de 1998, y la del foro de instancia del 30 de agosto de 1996; y para devolver el caso al Tribunal de Instancia para que, de acuerdo a lo aquí dispuesto y luego de celebrar una vista y pasar prueba a tales efectos, determine la cuantía concreta del pago al cual tiene derecho Fraya.


Jaime B. Fuster Berlingeri
Juez Asociado

---

[15] Antes de concluir, debemos atender la alegación de Fomento a los efectos de que como en este caso se trata de una reclamación en cobro de dinero y es una sentencia en rebeldía, el tribunal no podía entrar a determinar que la obra debía ser aceptada por Fomento, ya que éste no era el remedio solicitado por las partes. Entendemos que para determinar si procedía el cobro de dinero, era menester establecer si Fraya había cumplido con sus obligaciones según el contrato de obras y si Fomento había aceptado o no la obra. Realizar estas determinaciones no constituye otorgar un remedio diferente a lo solicitado originalmente.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Master Concrete Corp.

     Demandante

        vs.                    CC-1998-831         Certiorari

Fraya, S.E.
     Demandada-Recurrente

Comp. de Fomento Recreativo
     Demandado de Coparte
     Recurrida

SENTENCIA

San Juan, Puerto Rico, a 30 de noviembre de 2000.

Por los fundamentos expuestos en la Opionión que antecede, se revoca la sentencia del Tribunal de Circuito de Apelaciones del 26 de agosto de 1998, y la del foro de instancia del 30 de agosto de 1996; y se devuelve el caso al Tribunal de Instancia para que, de acuerdo a lo aquí dispuesto y luego de celebrar una vista y pasar prueba a tales efectos, determine la cuantía concreta del pago al cual tiene derecho Fraya.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Hernández Denton concurre con opinión escrita, a la cual se une el Juez Asociado señor Corrada del Río. El Juez Asociado señor Rivera Pérez disiente sin opinión escrita.

Isabel Llompart Zeno
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Master Concrete Corp.
  Demandante

        v.

Fraya, S.E.                     CC-1998-831           Certiorari
  Demandada-Recurrente

Comp. de Fomento Recreativo
  Demandado de Coparte-
  Recurrida

Opinión Concurrente emitida por el Juez Asociado señor Hernández Denton, a la cual se une el Juez Asociado señor Corrada del Río.

San Juan, Puerto Rico, a 30 de noviembre de 2000.

Aunque estamos de acuerdo con la Opinión del Tribunal de que el contratista "concluyó sustancialmente" la obra en el caso de autos y que tiene derecho a recibir de la Compañía de Fomento Recreativo el pago del precio de la obra, entendemos que su discusión sobre la doctrina de *exceptio non rite adimpleti contractus* en el caso de autos es *dictum* y tiene el potencial de confundir a la comunidad jurídica sobre su correcta aplicación.  Como no podemos endosar este proceder de la decisión mayoritaria, hemos decidido explicar nuestra posición mediante esta Opinión Concurrente.

I

La doctrina civilista suele distinguir entre obligaciones unilaterales y bilaterales. Son unilaterales aquellas en que sólo hay un vínculo obligatorio, pues sólo una persona se obliga, respecto de otra, sin que ésta asuma a su vez obligación alguna. Castán, Derecho Civil Español Común y Foral, Tomo III, Ed. Reus, Madrid, 1988, págs. 128-131. Estamos ante una obligación bilateral, también llamada recíproca o sinalagmática, cuando la misma engendra obligaciones a cargo de ambas partes. Id. Esto porque ambas partes son acreedoras y deudoras al mismo tiempo en vista de que cada obligación es contrapartida o causa de la otra. Puig Brutau, Fundamentos de Derecho Civil, Tomo I, Vol. II, Ed. Bosch, Barcelona, 1976, pág. 118-119.

La distinción entre contratos u obligaciones unilaterales o bilaterales reviste gran importancia por las particulares consecuencias que producen éstas últimas. Entre estos efectos se encuentran: (1) Cada parte puede pedir la resolución del contrato, si la otra no cumple con su obligación, a menos que prefiera el cumplimiento específico de la obligación y en su caso, la responsabilidad por los daños sufridos por el incumplimiento (condición resolutoria tácita). Artículo 1077 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 3052; (2) Si una de las partes ha incumplido su obligación por causa que no le es imputable, la otra no debe tampoco cumplir la suya viniendo liberada de su obligación. (doctrina de los riesgos). Artículo 1077 del Código Civil de Puerto Rico, *supra*.

Además de las mencionadas anteriormente, una de las consecuencias más importantes del carácter bilateral de una obligación es la llamada excepción de contrato no cumplido o *exceptio non adimpleti contractus*. Dicho principio descansa en la idea de ejecución simultánea y en la premisa de que cada parte puede rechazar el cumplimiento de su obligación mientras la otra parte no cumpla con la suya. Espín Cánovas, La Excepción en el Incumplimiento Contractual, 17 Anuario de Derecho Civil pág. 543 (1984). Ninguna de las partes de una obligación bilateral puede demandar el cumplimiento de la obligación contraria sin cumplir u ofrecer el cumplimiento de la propia obligación. Díez Picazo, Sistema de Derecho Civil, Vol. 2, Ed. Tecnos, Madrid, 1981, págs. 226-227.

Como una modalidad de la *exceptio non adimpleti contractus*, la doctrina ha reconocido la llamada doctrina de cumplimiento parcial o defectuoso, conocida también como la *exceptio non rite adimpleti contractus*. Esta doctrina aplica en el caso que una de las partes haya cumplido la prestación pero sin ajustarse debidamente a lo que exige el vínculo obligatorio. Es decir, la prestación se ha cumplido pero parcial o defectuosamente. Espín, *supra*, a la pág. 568; Díez Picazo, *supra*, a la pág. 227.

La doctrina española está conteste en que la *exceptio no rite adimpleti contractus* es una **defensa disponible al demandado**. Es una defensa **oponible al demandante** que pretende exigir el cumplimiento de una obligación a pesar de que él ha cumplido parcial o defectuosamente con su prestación. El efecto primordial de la aplicación de la doctrina es que el **demandado se ve liberado, al menos provisionalmente, de cumplir con la obligación**

**que le reclama el demandante.  En otras palabras, el demandado no vendrá obligado a cumplir con su parte hasta tanto el demandante cumpla con su prestación totalmente o libre de defectos.**  Véase Puig Brutau, *supra*, págs. 126-127; Espín Cánovas, *supra*, págs.569-570; Díez Picazo, *supra*, págs. 227-228.

Ahora bien, aunque como señalamos, el efecto de la *exceptio non rite adimpleti contractus* es que el demandado no tendrá que cumplir con su prestación hasta que la otra parte cumpla según lo pactado, es necesario que haya buena fe.  Espín, *supra* a la pág. 568-569, Artículo 1210 del Código Civil de Puerto Rico, 31 L.P.R.A 3375.  Así por ejemplo, si la causa del incumplimiento parcial o defectuoso se debe al que invoca la doctrina es evidente que la misma no es de aplicación.  Tampoco se podría invocar con éxito la doctrina si el demandado admitió la contraprestación sin reserva ni protesta alguna cuando la parcialidad o el defecto pudo comprobarlos.  Díez Picazo, *supra* a la pág. 227.

En los casos en que la aplicación de la doctrina de *exceptio non rite adimpleti contractus* puede resultar contraria al principio de buena fe en la contratación se ha reconocido que el tribunal, para evitar el rigor de la aplicación de la doctrina en dichas circunstancias, puede acudir a otras soluciones que ofrece el derecho como, por ejemplo, reconocer una disminución proporcional del precio, en razón de las deformidades o los vicios, siempre y cuando éstos no hagan la obra inútil para su destino.  Sentencia del Tribunal Supremo Español de 15 de marzo de 1979; Miguel A. Del Arco y Manuel Pons, <u>Derecho de la Construcción</u>, Ed. Hesperia, 19809, pág. 41-43.

A la luz del previo trasfondo doctrinal, entendemos que la referida doctrina de *exceptio non rite adimpleti contractus* es totalmente inaplicable al caso de autos y, por ende, innecesarios y bizantinos los pronunciamientos de la Opinión del Tribunal ante estos hechos. Veamos.

II

En el caso de marras, como bien señala la mayoría de este Tribunal, Fraya, "completó sustancialmente" la obra en cuestión, lo que supone un reconocimiento de que el cumplimiento de Fraya fue parcial o incompleto.  Por tanto, está presente el elemento medular que activa la aplicación de la doctrina de *exceptio non rite adimpleti contractus*: cumplimiento parcial o defectuoso.

Si aplicáramos correctamente la referida doctrina al caso de autos, es **a la Compañía de Fomento Recreativo, por ser la parte demandada**[16], a quien le correspondía invocar la doctrina.  De haberlo hecho con éxito, el resultado sería contrario al propuesto por la mayoría de este Tribunal.  Esto pues el efecto de la invocación de la doctrina sería que

---

[16] Inicialmente Master Concrete Corp. presentó una demanda contra Fraya, S.E., la Compañía de Fomento Recreativo y PRAICO. Posteriormente Fraya presentó una demanda contra coparte contra  la Compañía de Fomento Recreativo. La controversia que no atañe es respecto a dicha demanda, por

la Compañía de Fomento no tendría que cumplir con su prestación (pagar el precio de la obra) hasta tanto Fraya, S.E, cumpliera totalmente con la ejecución de la obra.

Ahora bien, en el supuesto de que la Compañía de Fomento hubiese levantado la defensa, si Fraya demostraba que la Compañía de Fomento Recreativo no obró de buena fe, el tribunal de instancia para evitar el rigor de la aplicación de *la exceptio non rite adimpleti contractus* podría haber adoptado otra solución más justa, como por ejemplo, imponerle a la Compañía de Fomento la obligación de hacer un "pago parcial" en proporción a la obra completada hasta ese momento.

Por lo anterior, enfatizamos que la doctrina *exceptio non rite adimpleti contractus* no es aplicable al caso de autos pues Fomento, la parte demandada, no la invocó como defensa. Además, debemos aclarar que la aplicación de la doctrina no tiene el efecto, como sugiere la Opinión del Tribunal, de reconocer "una causa de acción" al contratista de una obra que aunque la ha completado sustancialmente, no ha cumplido totalmente con su prestación, para poder recibir un pago parcial en proporción a lo ya realizado.  Esto, aunque sin dudas es correcto dentro de los parámetros de la cláusula contractual de conclusión sustancial, no lo es bajo la mencionada doctrina civilista. Todo lo contrario, la aplicación de la referida doctrina le impediría recibir pago alguno al contratista hasta tanto éste cumpla totalmente con su prestación.

No obstante, entendemos que el análisis que hace la Opinión de este Tribunal de los términos del contrato suscrito entre las partes, apoya la conclusión de que una vez alcanzada la "conclusión sustancial" de la obra, el contratista Fraya tenía derecho al pago de la obra. Por estas razones entendemos que los pronunciamientos de la Opinión del Tribunal sobre la doctrina de *exceptio non rite adimpleti contractus* son inaplicables al caso de autos y constituyen meramente un ejercicio de erudición en el vacío que puede confundir más de lo que realmente orienta a la profesión. Por eso concurrimos.


Federico Hernández Denton
Juez Asociado

---

tanto, en lo sucesivo nos referimos a Fraya como la parte demandante y a la Compañía de Fomento Recreativo como la parte demandada.