Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VI

| HRC HOLDING QOZB<br><br>Apelante<br><br>v.<br><br>PR LEGAL RESOURCE LLC<br><br>Apelados | KLAN202300828 | *Apelación*<br>Procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Civil Núm.: SJ2023CV06978<br>Salón: 803<br><br>Sobre:<br><br>Desahucio, Cobro de Dinero |
|---|---|---|

Panel integrado por su presidenta, la Jueza Ortiz Flores, el Juez Rivera Torres y la Jueza Rivera Pérez.

Rivera Pérez, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 26 de octubre de 2023.

Comparece ante nos la parte demandada-apelante, PR LEGAL RESOURCE LLC (en adelante, PR LEGAL), mediante un recurso de *Apelación* y nos solicita la revisión de la *Sentencia Parcial* dictada el 11 de septiembre de 2023 y notificada el 13 de septiembre de 2023 por el Tribunal de Primera Instancia, Sala Superior de San Juan (en adelante, TPI). Mediante este dictamen, el TPI declaró Ha Lugar la solicitud de desahucio presentada por la parte demandante-apelada, HRC HOLDING QOZB, LLC (en adelante, HRC HOLDING) y ordenó a PR LEGAL a desalojar las *suites* núm. 800 y 812 del edificio The Hato Rey Center en un término de veinte (20) días a partir de la notificación del dictamen. Además, se fijó en $5,000.00 el monto de la fianza para presentar un recurso de apelación.

Por los fundamentos que expondremos, se confirma la *Sentencia Parcial* apelada.

**I**

El 20 de julio de 2023, HRC HOLDING presentó una *Demanda* sobre desahucio y cobro de dinero por la vía sumaria en contra de PR LEGAL.[1] En esta, HRC HOLDING alegó que el 28 de junio de 2019, Vivoni Law Office, LLC y SFIII PR, LCC suscribieron un contrato titulado *Office Space Lease Agreement* para el arrendamiento de la *suite* núm. 812 del edificio The Hato Rey Center en San Juan. Este contrato fue enmendado el 24 de septiembre de 2021 mediante un acuerdo titulado *Assignment and Amendment to Office Space Lease Agreement* a los fines, entre otros, de incluir el arrendamiento de la *suite* núm. 800 como parte del acuerdo y ceder a PR LEGAL el derecho de arrendamiento que ostentaba SFIII PR, LCC. Según se alegó en la demanda, en el contrato de arrendamiento se acordó, entre otras cosas, lo siguiente:

> "7. El canon de arrendamiento base (*basic rent*) estipulado en el Contrato para el primer año fue de $12.00 el pie cuadrado, para un total de ocho mil quinientos de ocho mil quinientos treinta y dos dólares ($8,532.00) anual o setecientos once dólares ($711.00) mensual, y un canon de alquiler adicional (*Additional Rent*) de $12.00 el pie cuadrado, para un total de ocho mil quinientos treinta y dos dólares ($8,532.00) anual o setecientos once dólares ($711.00) mensual. Véase, **Exhibit A**, página ii.
>
> 6. La sección 8 del Contrato estipula que si el pago del arrendamiento no se ha realizado dentro de los primeros catorce (14) días del mes, se hará un cargo adicional por tardanza correspondiente al doce por ciento (12%) del total adeudado. Véase, **Exhibit A**, pág. 7."[2] (énfasis en el original).

En cuanto a la causa de acción, HRC HOLDING alegó que PR LEGAL incumplió con su obligación de pagar el canon acordado desde noviembre de 2022, por lo que el 6 de junio de 2023 le envió una *Notificación de Incumplimiento y Terminación de Contrato*, en la cual le advirtió lo siguiente:

> "8. [...] HRC advirtió al arrendatario que había incumplido con los términos de pago del Contrato. Por lo tanto, conforme al artículo 29 del Contrato, HRC solicitó el pago del balance pendiente ($28,074.74)

---

[1] Apéndice de la *Apelación*, págs. 1-3.
[2] *Íd.*, págs. 1-2.

dentro de treinta (30) días de cursada la Notificación o, de lo contrario, el Contrato expiraría y el arrendatario sería responsable del balance adeudado, más el alquiler que se acumulase de ahí en adelante a razón de 200% sobre el alquiler aplicable durante el año anterior, conforme al artículo 30 del Contrato."[3]

Transcurrido el término concedido, PR LEGAL no saldó el balance adeudado, por lo que el 6 de julio de 2023 HRC HOLDING le notificó a PR LEGAL que dio por expirado el contrato y procedió a presentar la demanda del presente caso. En esta, HRC HOLDING solicitó como remedio que se ordenara el lanzamiento de PR LEGAL; el pago de $32,067.02 adeudados al 15 de julio de 2023; el pago del "*hold-over rent*" y de las penalidades que se acumularan hasta que PR LEGAL desalojara la propiedad; y el pago de las costas y de los honorarios de abogados pactados.

El 18 de agosto de 2023, PR LEGAL presentó su *Contestación a Demanda y Solicitud para que se Convierta en un Procedimiento Ordinario*.[4] En síntesis, PR LEGAL negó las alegaciones en su contra, levantó varias defensas afirmativas, y solicitó la conversión del proceso sumario de desahucio a uno ordinario.

En esa misma fecha, PR LEGAL presentó, además, una *Urgente Solicitud de Interdicto Posesorio*[5] solicitando que se ordenara a HRC HOLDING a lo siguiente:

"[...] [Q]ue mientras continuemos poseyendo legalmente las propiedades arrendadas, se mantengan las áreas limpias, los aires acondicionados prendidos, los accesos abiertos, los estacionamientos abiertos, los baños limpios y con papel y jabón, se recoja la basura en las oficinas y cualquier otro servicio necesario para el disfrute ininterrumpido y seguro de las facilidades hasta que este Honorable Tribunal expida una Sentencia final que determine lo contrario."[6]

El 21 de agosto de 2023, se celebró una vista, mediante videoconferencia, a la cual comparecieron las partes y sus

---

[3] *Íd.*, pág. 3.
[4] Apéndice de la *Apelación*, págs. 92-105.
[5] Apéndice de la *Apelación*, págs. 120-121.
[6] *Íd.*, pág. 121.

representantes legales.[7] Durante la misma, las partes argumentaron a favor de sus respectivas posiciones con relación a la solicitud de conversión del proceso de desahucio. Finalizada la vista, el TPI emitió una *Orden*, en la cual dispuso lo siguiente:

> "Según discutido en corte abierta se señala vista evidenciaria sobre desahucio el jueves 24 de agosto a las 2: 00 pm.
>
> Se bifurca el caso de manera que la causa de acción de desahucio permanece sumaria según dispone el código de enjuiciamiento civil, 32 L.P.R.A. Sec.2821 y subsiguientes, y las causas de cobro de dinero[,] daños, [e] incumplimiento de contrato se atenderán mediante el trámite ordinario."[8]

En esa misma fecha, PR LEGAL presentó una *Moción Informativa sobre Consignación y Otros Extremos*. En su moción, PR LEGAL informó que había consignado $31,720.00, equivalentes a los cánones de arrendamiento vencidos desde diciembre del 2022 hasta septiembre de 2023.[9] Además, habiéndose consignado el importe del precio de la deuda, solicitó lo siguiente:

> "[S]olicitamos que este honorable Tribunal encuentre a la Demandada en cumplimiento con toda obligación contractual, estime improcedente el reclamo de desahucio contra la parte compareciente y deje sin efecto la vista del próximo jueves 24 de agosts a la 2:00pm."[10]

El 22 de agosto de 2023, el TPI emitió y notificó una *Orden* en atención a la *Moción Informativa sobre Consignación y Otros Extremos* presentada por PR LEGAL, en la cual dispuso lo siguiente:

> "Académico, en la vista celebrada el 21 de agosto se declaró No ha lugar a la consignación propuesta. La consignación no cumple con los requisitos legales ya que no se ofreció a la parte demandante y fue rechazada. Por otro lado, habiendo señalado vista de desahucio para el jueves, la consignación está hecha a destiempo."[11]

---

[7] Apéndice de la *Apelación*, págs. 120-125.
[8] Apéndice de la *Apelación*, pág. 127. La *Orden* se emitió el 21 de agosto de 2023, y se notificó el 22 de agosto de 2023
[9] Apéndice de la *Apelación*, págs. 79-91.
[10] *Íd.*, pág. 82.
[11] Apéndice de la *Apelación*, pág. 126.

El 24 de agosto de 2023, PR LEGAL presentó una *Reconvención.*[12] En síntesis, PR LEGAL alegó que HRC HOLDING incumplió con las obligaciones que asumió en el contrato de arrendamiento relacionadas a prestación de servicios de utilidades y manteamiento de la propiedad arrendada. Además, le imputó incumplimiento contractual por haber resuelto el contrato y requerido el desalojo del edificio antes del vencimiento del término del arrendamiento para llevar a cabo ciertas reparaciones. Como remedio, PR LEGAL solicitó en la reconvención el pago de no menos de $350,000.00 por concepto de indemnización por los daños y perjuicios alegadamente sufridos por causa del incumplimiento contractual y por concepto de reembolso del depósito retenido, las mejoras realizadas, y de lo pagado durante los meses en que no se pudo utilizar la propiedad y en que los servicios de utilidades y mantenimiento se proveyeron de forma deficiente.

En esa misma fecha, se celebró mediante videoconferencia la *Vista de Desahucio,* a la cual comparecieron las partes y sus representantes legales.[13] Durante la misma, las partes presentaron prueba y argumentaron a favor de sus respectivas posiciones con relación a la solicitud de desahucio. Entre otras cosas, PR LEGAL reiteró su solicitud para que el proceso de desahucio se viera en su totalidad por la vía ordinaria.

Finalmente, el 11 de septiembre de 2023, notificada el 13 de septiembre de 2023, el TPI dictó la *Sentencia Parcial* apelada.[14] Mediante este dictamen, el TPI declaró Ha Lugar la solicitud de desahucio presentada por HRC HOLDING. En consecuencia, se ordenó a PR LEGAL a desalojar las *suites* núm. 800 y 812 del edificio The Hato Rey Center en un término de veinte (20) días a partir de la

---

[12] Apéndice de la *Apelación,* págs. 106-111.
[13] Apéndice de la *Apelación,* págs. 128-135.
[14] Apéndice de la *Apelación,* págs. 113-119.

notificación del dictamen. Además, se fijó en $5,000.00 el monto de la fianza para presentar un recurso de apelación. El TPI concluyó y resolvió lo siguiente:

> "En este caso entre la parte demandada firmó un contrato de arrendamiento enmendado en el que se compromete a pagar una renta básica y una renta adicional por dos oficinas. En el transcurso de la relación comercial, la parte demandante quien para la fecha era el arrendador, envía una carta informando la necesidad de hacer reparaciones que van a requerir el desalojo del edificio. Esta carta se envió en noviembre de 2022 y se esperaba el desalojo para julio 30 del 2023 o sea el aviso fue dado con 8 meses de anticipación. La parte demandada estipuló en corte abierta que dejó de hacer pagos en diciembre de 2022. Al mes de recibida la carta dejó cumplir su obligación de hacer pagos. En la vista la propia parte demandada testificó problemas con el aire acondicionado y con sabandijas que confirman la posición de la parte demandante de que el edificio necesitaba reparaciones mayores.
>
> La posición de la parte demandada es que pueden permanecer en la posesión de los locales arrendados por virtud del contrato de arrendamiento enmendado cuya duración es de 5 años. Sin embargo, al ellos incumplir con su obligación de pago, abrieron la puerta para que la parte demandante diera por terminado el contrato, como permite el propio documento. La parte demandada tiene unas alegaciones de gastos y mejoras que equivalen o superan las rentas que dejó de pagar, sin embargo, el contrato no provee para que la renta se sustituya por gastos en mejoras. Puede que la parte demandada tenga un derecho a recuperar su inversión, pero, no tiene el derecho a permanecer en la propiedad."[15]

Inconforme con dicha determinación, PR LEGAL acudió ante nos mediante el presente recurso de *Apelación*, en cual señala los errores siguientes:

> Erró el Tribunal al dilucidar lo pertinente al desahucio mediante el procedimiento sumario cuando la prueba necesaria para adjudicarlo se ventilar[á] por el trámite ordinario según ordenado por el propio tribunal.
>
> Erró el Tribunal al declarar con lugar el desahucio ante la ausencia de prueba que será producida y evaluada en el procedimiento ordinario por orden del Tribunal.

El 20 de septiembre de 2023, emitimos y notificamos una *Resolución*, mediante la cual determinamos que la consignación en

---

[15] *Íd.*, págs. 118-119.

la Secretaría del TPI del importe del precio de la deuda realizada el 23 de agosto de 2023 por PR LEGAL cumplía con lo exigido en el Artículo 630 del Código de Enjuiciamiento Civil, 32 LPRA sec. 2832.

El 29 de septiembre de 2023, HRC HOLDING presentó su *Alegato de la Parte Apelada*.

Contando con el beneficio de la comparecencia de las partes, procedemos a resolver.

## II

### A.

La acción de desahucio es el procedimiento que puede llevar una persona propietaria de algún bien inmueble para recuperar la posesión de hecho. El trámite de desahucio de nuestro ordenamiento está reglamentado en los Artículos 620 al 634 de la *Ley de Procedimientos Legales Especiales*, contenida en el Código de Enjuiciamiento Civil, 32 LPRA secs. 2821-2838.

Como norma general, la causa de acción de desahucio se tramita de forma sumaria, pues se reconoce que el Estado tiene el interés de atender con agilidad el reclamo de una persona dueña de un inmueble que ha sido impedida de ejercer su derecho a poseer y disfrutar de su propiedad. *Payano v. SLG Cruz Pagán*, 209 DPR 876 (2022); *ATPR v. SLG Volmar-Mathieu*, 196 DPR 5 (2016). Como corolario de lo anterior, el Artículo 627 del Código de Enjuiciamiento Civil, *supra*, dispone que los desahucios basados en falta de pago solo permiten que la parte demandada presente prueba de que pagó los cánones adeudados.

No obstante, el Tribunal Supremo ha reconocido que las partes demandadas tienen la facultad de presentar defensas afirmativas con el fin de convertir el procedimiento en uno ordinario. *Payano v. SLG Cruz Pagán*, supra. En virtud de lo anterior, los foros judiciales gozan de discreción para convertir el procedimiento de

desahucio en uno ordinario, prorrogar términos, posponer señalamientos y permitir enmiendas a las alegaciones. *Íd.*

**B.**

En nuestro ordenamiento jurídico rige el principio de la libertad de contratación o autonomía de la voluntad, según el cual las partes contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que las mismas no sean contrarias a las leyes, a la moral ni al orden público. Artículo 1207 del Código Civil, 31 LPRA ante sec. 3372;[16] *Feliciano v. Luxury Hotels Int'l.*, 210 DPR 712 (2022); *Álvarez v. Rivera*, 165 DPR 1, 17 (2005) *S.L.G. Irizarry v. S.L.G. García*, 155 DPR 713 (2001); *Trinidad v. Chade*, 153 DPR 280 (2001).

A partir del perfeccionamiento de un contrato, las partes quedan obligadas al cumplimiento de lo expresamente pactado y a las consecuencias que se deriven del mismo, ello conforme a la buena fe, al uso y a la ley. Artículo 1210 del Código Civil, 31 LPRA ante sec. 3375; *Trinidad v. Chade*, supra. De esta manera, cuando un contrato es legal, válido y carente de vicios del consentimiento, el mismo constituye la ley entre las partes y debe cumplirse a tenor de este. Artículo 1044 del Código Civil, 31 LPRA ante sec. 2994; *Feliciano v. Luxury Hotels Int'l.*, supra. Es por ello, que el Artículo 1054 del Código Civil, 31 LPRA ante sec. 3018, sujeta a aquellos que de alguna manera contravengan sus obligaciones a la indemnización de los daños y perjuicios causados. Bajo dicho supuesto, todo incumplimiento contractual dará lugar a un resarcimiento. *Álvarez v. Rivera*, supra, pág. 18.

Las acciones *ex contractu* se basan en el quebrantamiento de un deber que surge de un contrato expreso o implícito, y tienen por

---

[16] El *"Código Civil de Puerto Rico"*, Edición de 1930, fue derogado y sustituido por la Ley Núm. 55-2020, según emendada, conocida como *"Código Civil de Puerto Rico" de 2020*, 31 LPRA sec. 5311 *et seq.* Los hechos que originan la presente controversia tomaron lugar durante la vigencia del código anterior, por lo cual esta es la ley aplicable.

objeto que se cumplan las promesas sobre las cuales las partes otorgaron su consentimiento. *Íd.* Por tanto, para que proceda esta acción tiene que haber habido un acuerdo de voluntades que genere una obligación, situación o estado de derecho resultante de un convenio y que haya creado unas expectativas a base de las cuales actuaron las partes. *Íd.*, pág. 18; *Trinidad v. Chade*, supra.

En el caso de las obligaciones recíprocas, el Artículo 1077 del Código Civil, 31 LPRA ante sec. 3052, dispone lo siguiente:

> "La facultad de resolver las obligaciones se entiende implícita en las recíprocas, para el caso de que uno de los obligados no cumpliere con lo que le incumbe.
>
> El perjudicado podrá escoger entre exigir el cumplimiento o la resolución de la obligación, con el resarcimiento de daños y abono de intereses en ambos casos. También podrá pedir la resolución, aun después de haber optado por el cumplimiento, cuando éste resultare imposible."

De la referida disposición estatutaria surge que, ante un incumplimiento de una obligación bilateral, el perjudicado puede optar entre exigir el cumplimiento de la obligación o su resolución, y en ambos casos, si tal incumplimiento ha tenido repercusiones en su patrimonio de forma desfavorable, puede reclamar el resarcimiento por los daños ocasionados. *Álvarez v. Rivera*, supra, pág. 19.

En cuanto a la resolución del contrato, se ha indicado que la referida disposición estatutaria establece una condición resolutoria tácita en todo contrato bilateral que opera *ex propio vigore* o por su propia fuerza. *Íd.* En consecuencia, si uno de los contratantes incumple el otro puede darlo por resuelto sin necesidad de que un tribunal así lo declare.

Cuando nos enfrentamos a un cumplimiento parcial o defectuoso, en principio, se justifica el ejercicio de la acción de resolución. No obstante, en la doctrina civilista se entiende que el ejercicio del derecho de resolución no debe ser utilizado en todas las

situaciones ya que la buena fe en la contratación puede imponer alguna moderación a este resultado. *Álvarez v. Rivera*, supra, pág. 19, citando a L. Díez-Picazo y A. Gullón, *Sistema de Derecho Civil*, 4ta ed. rev., Madrid, Ed. Tecnos, 1983, Vol. II, págs. 226-227, y a J. Puig Brutau, *Fundamentos de Derecho Civil*, 2da ed. rev., Barcelona, Ed. Bosch, Tomo I, Vol. 2, 1985, págs. 126-127. Dicho de otra manera, únicamente si el cumplimiento parcial o defectuoso implica la frustración de la finalidad contractual para la parte perjudicada, procederá entonces, la resolución del contrato. *Íd.*, págs. 19-20. En los demás casos, en que la prestación se ha efectuado parcialmente o resulta defectuosa, será procedente exigir el cumplimiento total o libre de defectos y, en los casos en que proceda, una reducción proporcional del precio. *Íd.*

Por otra parte, el Artículo 1077 del Código Civil, *supra*, reconoce que, ante el incumplimiento de una obligación recíproca, la parte perjudicada puede exigir su cumplimiento. En decir, si el que incurre en incumplimiento exige la satisfacción de la prestación debida, la otra parte puede oponer la defensa del contrato incumplido. *Álvarez v. Rivera*, supra, pág. 20. Este principio general en materia de contratos recíprocos es conocido en la doctrina civilista como la excepción de contrato no cumplido (*exceptio non adimpleti contractus*). *Íd.* Esta excepción de contrato no cumplido se fundamenta en la regla de la ejecución simultánea de las obligaciones recíprocas. *Íd.*, citando a Puig Brutau, *op. cit.*, pág. 115; Artículo 1053 del Código Civil, 31 LPRA sec. 3017.

Existe una modalidad de la excepción de contrato no cumplido, que la jurisprudencia y la doctrina civilista ha reconocido como la "excepción de contrato no cumplido adecuadamente" o "excepción de falta de cumplimiento regular", denominada en latín como la *exceptio non rite adimpleti contractus*. *Álvarez v. Rivera, supra*, págs. 20-21. Esta excepción aplica en el caso que una de las

partes haya cumplido la prestación parcial o defectuosamente sin ajustarse debidamente a lo que exige el vínculo obligatorio. *Íd.*

La *exceptio non rite adimpleti contractus* es una defensa disponible al demandado, la cual, es oponible al demandante que pretende exigir el cumplimiento de una obligación a pesar de que él ha cumplido parcial o defectuosamente con su prestación. *Íd.*, págs. 21-22. El efecto o consecuencia primordial de la aplicación de la excepción es que el demandado no vendrá obligado a cumplir con su parte hasta tanto el demandante cumpla con su prestación totalmente o libre de defectos. *Íd.*, pág. 22, citando a Díez-Picazo y Gullón, *op. cit.*, págs. 227-228; Puig Brutau, *op. cit.*, pág. 116.

Ahora bien, no todo supuesto de cumplimiento parcial o defectuoso puede tener el efecto de liberar al demandado de cumplir con su prestación. El demandado no podrá invocar con éxito la doctrina en los casos en que la aplicación de la *exceptio non rite adimpleti contractus* puede resultar contraria al principio de buena fe en la contratación. *Íd.*, citando a D. Espín Canovas, *La excepción de incumplimiento contractual*, 17 An. Der. Civ. 543, 568 (1964).[17]

Al respecto, en *Álvarez v. Rivera*, supra, pág. 22, el Tribunal Supremo aclaró y resolvió que esta defensa puede ser invocada por el demandado en los casos en que el demandante pretende exigir el cumplimiento de una obligación a pesar de que él ha cumplido parcial o defectuosamente con su prestación y su efecto será, que el demandado no vendrá obligado a cumplir con su parte hasta tanto el demandante cumpla con la suya. No obstante, en los casos en

---

[17] En *Álvarez v. Rivera*, supra, pág. 22, el Tribunal Supremo da los ejemplos siguientes:

"Así, por ejemplo, si la causa del incumplimiento parcial o defectuoso se debe a la conducta del demandado, resulta obvio que no se puede invocar la excepción. Tampoco se podrá invocar, con éxito, la excepción si el demandado admitió la contraprestación sin reserva ni protesta alguna cuando pudo comprobar los defectos ya que iría contra sus propios actos. En estos casos es que el tribunal deberá reconocer una disminución proporcional del precio, en razón de lo no cumplido o de los defectos en la prestación." (citas omitidas).

que su aplicación pueda resultar contraria al principio de la buena fe contractual, el demandado no podrá invocar la excepción exitosamente. *Íd.*, pág. 23. En esos casos procede reducir el importe de lo no realizado o en atención a lo llevado a cabo defectuosamente. *Master Concrete Corp. v. Fraya, S.E.*, 152 DPR 616, 630-631 (2000).

## C.

En un contrato de arrendamiento de cosas el arrendador se obliga a dar al arrendatario el goce y uso de una cosa por tiempo determinado y precio cierto. Artículo 1433 del Código Civil, 31 LPRA ante sec. 4012. Así, en un contrato de arrendamiento las partes —el arrendador y el arrendatario— se obligan recíprocamente. Artículos. 1444-1445 del Código Civil, 31 LPRA ante secs. 4051-4052. Al perfeccionarse el contrato de arrendamiento surgen las obligaciones bilaterales que el Código Civil les impone a una y a otra parte.

De ordinario, las dos partes que intervienen en un contrato de arrendamiento son el arrendador o la arrendadora —quien se obliga a ceder el uso de la cosa— y el arrendatario o la arrendataria —quien obtiene el uso de la cosa arrendada. José R. Vélez Torres, *Los contratos,* San Juan, Puerto Rico, 1987, pág. 356.

Entre las obligaciones del arrendador o la arrendadora está entregar al arrendatario la cosa objeto del contrato y mantener al arrendatario o a la arrendataria en el goce pacífico del arrendamiento por todo el tiempo del contrato. Artículo 1444 del Código Civil, 31 LPRA ante sec. 4051. Por otro lado, es responsabilidad del arrendatario o la arrendataria pagar el precio del arrendamiento en los términos convenidos y usar la cosa arrendada como una persona prudente, razonable y diligente, destinándola al uso pactado. Artículo 1445 del Código Civil 1930, 31 LPRA ante sec. 4052.

Si el arrendatario o la arrendataria incumple con sus

obligaciones, el arrendador o la arrendadora podrá pedir la rescisión del contrato y la indemnización de daños y perjuicios, o sólo esto último y dejar el contrato subsistente. Artículo 1446 del Código Civil, 31 LPRA ante sec. 4053.

**III**

En su recurso de *Apelación,* PR LEGAL señala que erró el TPI "al dilucidar lo pertinente al desahucio mediante el procedimiento sumario cuando la prueba necesaria para adjudicarlo se ventilar[á] por el trámite ordinario según ordenado por el propio tribunal" y "al declarar con lugar el desahucio ante la ausencia de prueba que será producida y evaluada en el procedimiento ordinario por orden del Tribunal".

En síntesis, PR LEGAL argumenta que no procedía que se adjudicara la causa de acción de desahucio basada en la falta de pago del canon de arrendamiento, debido a que, tratándose de obligaciones recíprocas, tenía la facultad de suspender el cumplimiento de su obligación bajo el contrato ante el incumplimiento de HRC HOLDING con las suyas. A nuestro juicio, no le asiste la razón. Veamos.

De un examen del contrato de arrendamiento suscrito entre las partes, surge la obligación contractual de PR LEGAL de pagar las rentas según lo dispuesto en el contrato. Al respecto, el Artículo 8 (c) del contrato establece lo siguiente:

> "8. <u>Payment of Basic Rent, Additional Rent; Late Payment Charges.</u>
>
> [...]
>
> c. Tenant covenants to pay the Monthly Basic Rent and Additional Rent as herein provided, when due and without notice or demand, in lawful money of the United States of America, and without any abatement, reduction, setoff, counterclaim, defense or deduction whatsoever, except as otherwise expressly provided for elsewhere in this Lease Agreement."[18]

---

[18] Apéndice de la *Apelación,* págs. 15-16.

Conforme a los términos y condiciones establecidos en este Artículo, PR LEGAL se comprometió a cumplir con su obligación de pagar los cánones de arrendamiento independientemente de que tuviera una reclamación en contra de su arrendador.

Por su parte, HRC HOLDING tenía facultad bajo el contrato para dar por terminado el mismo ante un evento de incumplimiento de arrendatario con su obligación contractual de pagar los cánones de arrendamiento, como en efecto hizo.[19] Al respecto, el Artículo 29 del contrato establece lo siguiente:

"29. Events of Default, Remedies, Damages.

a. The occurrence of any of the following events shall constitute an event of default under this Lease Agreement (each, an "Event of Default"):

1) If Tenant defaults in the payment when and as due of all or any portion of any installment of Basic Rent or any Additional Rent on the date upon which they shall first become due, and such default shall continue for fourteen (14) calendar days after the due date, or if Tenant fails to pay when and as due any Basic Rent or Additional Rent three (3) consecutive times during any twelve (12) month period, or five (5) times during any Lease year, even if Tenant pays such Rent within the fourteen (14) calendar days after the due date;

2) Tenant fails to fulfill and perform any of the covenants, terms or conditions of this Lease Agreement, other than the covenants for the payment of any amounts due under this Lease Agreement;

[...]

b. Upon the occurrence of an Event of Default, Landlord may, at any time thereafter, give Tenant a notice of termination of this Lease setting forth a termination date thirty (30) days from the date of giving such notice. Upon the expiration of said thirty (30) day period, and if such breach continues or is not fully remedied to the satisfaction of Landlord, this Lease and the terms and rights hereby granted will expire and terminate with the same effect as if that day were the Termination Date. Notwithstanding the foregoing, in connection with a breach which cannot be remedied or cured within said thirty (30) day period (other than a breach related to non-payment of an amount due hereunder, assignment of this Lease, subletting of all or any portion of the Leased Premises, filing of a voluntary insolvency proceeding by Tenant or voluntary abandonment of the Leased Premises by Tenant), Landlord may extend the

---

[19] Véase, *Notice of Default and Termination of Lease* con fecha de 6 de junio de 2023. Apéndice de la *Apelación*, págs. 15-16.

time of Tenant within which to our such breach as necessary, but only it Tenant, within such thirty (30) day period, promptly commences and thereafter proceeds diligently and continuously to cure such breach, provided that such period of time shall not be so extended as to jeopardize the interest of Landlord in the Land and/or the Building or so as to subject Landlord to any liability, civil or criminal; or if an Event of Default occurs, Landlord, whether or not this Lease has been terminated, may, without notice to Tenant, immediately or at any time thereafter re-enter into or upon the Leased Premises or any part thereto, either by summary proceedings or by any suitable action or proceeding at law, or by force or otherwise, to the extent legally permitted, without being liable to indictment, prosecution or damages therefor, and may repossess the Leased Promises and remove any persons or property therefrom, to the extent that Landlord may have, hold and enjoy the Leased Premises as in the beginning of the Lease Term. The words re-enter", re-entry" and re-entered", as used in this Lease, are not restricted to their technical legal meanings."[20]

Según expusimos, la excepción del contrato 'no cumplido adecuadamente' o *exceptio non rite adimpleti contractus* es una defensa disponible al demandado, la cual, es oponible al demandante que pretende exigir el cumplimiento de una obligación a pesar de que él ha cumplido parcial o defectuosamente con su prestación. *Álvarez v. Rivera, supra,* págs. 21-22. El efecto o consecuencia primordial de la aplicación de la excepción es que el demandado no vendrá obligado a cumplir con su parte hasta tanto el demandante cumpla con su prestación totalmente o libre de defectos. *Íd.*, pág. 22, citando a Díez-Picazo y Gullón, *op. cit.*, págs. 227-228; Puig Brutau, *op. cit.*, pág. 116.

Ahora bien, no todo supuesto de cumplimiento parcial o defectuoso puede tener el efecto de liberar al demandado de cumplir con su prestación. El demandado no podrá invocar con éxito la doctrina en los casos en que la aplicación de la *exceptio non rite adimpleti contractus* puede resultar contraria al principio de buena fe en la contratación. *Íd.*, citando a D. Espín Canovas, *op. cit., pág.* 568.

---

[20] Apéndice de la *Apelación,* págs. 37-40.

A la luz de lo anterior determinamos, en este caso en particular, que la defensa del contrato 'no cumplido adecuadamente' levantada por PR LEGAL como parte de su reclamación contra HRC HOLDING, no incide sobre la causa de acción de desahucio.

Por lo tanto, el TPI en el ejercicio de su discreción podía bifurcar las causas de acción de manera que el desahucio se tramitara por la vía sumaria, y las demás causas de acción por la vía ordinaria.

**IV**

Por los fundamentos expuestos, se confirma la *Sentencia Parcial* apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones