Estado Libre Asociado de Puerto Rico
**TRIBUNAL DE APELACIONES**
**PANEL V**

| | | |
|---|---|---|
| CÉSAR FRANCISCO CORTÉS CARDONA/CARIDAD NOELIA GALINDO PORTILLA **Recurrida** Vs. JORGE ROJAS MERCADO H/N/C SECRET GARDEN **Recurrente** | KLRA202500114 | *REVISIÓN ADMINISTRATIVA* procedente del Departamento de Asuntos del Consumidor Querella Núm. SAN-2023-0013581 SOBRE: Ley Núm. 5 de 23 de abril de 1973 (Ley Orgánica de DACo |

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Bonilla Ortiz y la Jueza Mateu Meléndez.

**Hernández Sánchez, Juez Ponente**

**SENTENCIA**

En San Juan, Puerto Rico, a 9 de mayo de 2025.

El 20 de febrero de 2024, el Sr. Jorge Rojas Mercado H/N/C Secret Garden (el recurrente) compareció ante nos mediante un *Recurso de Revisión* y solicitó la revisión de una *Resolución* que se emitió el 17 de diciembre de 2024 y se notificó el 27 de diciembre de 2024 por el Departamento de Asuntos del Consumidor (DACo). Mediante el aludido dictamen, el DACo declaró Ha Lugar la *Querella.* En consecuencia, le ordenó al recurrente, en el término de veinte (20) días a reembolsarle al Sr. César Cortés Cardona (señor Cortés Cardona) y/o la Sra. Caridad Galindo Portilla (señora Galindo Portilla) (en conjunto, parte recurrida) la suma de $34,395.41 más el interés legal vigente.

Por los fundamentos que expondremos a continuación, ***confirmamos*** el dictamen recurrido

**I.**

El 10 de marzo de 2023, el señor Cortés Cardona presentó una *Querella* ante el DACo al amparo de la Ley Núm. 5 de 23 de abril de 1973, según enmendada, mejor conocida como *Ley Orgánica del*

*Departamento de Asuntos del Consumidor,* 3 LPRA sec. 341 *et seq.* en contra del señor Rojas Mercado.[1] En síntesis, alegó que, que el recurrente instaló un estanque y un sistema de riego en su residencia, el cual tenía un sinnúmero de desperfectos. Particularmente, sostuvo que el estanque tenía un escape de agua y que no se había arreglado, puesto que el recurrente siempre tenía una excusa para evitar arreglarlo. Además, señaló que la factura por consumo de agua era de $1,500.00. No obstante, aclaró que, al cerrar el sistema instalado, la factura por consumo de agua era de $100.00. Adujo que, dicha construcción se planificó para el disfrute y distracción de su familia. Sin embargo, trajo problemas. Finalmente, esbozó que, la compañía Secret Garden no aparecía registrada y que fue cancelada desde abril de 2014. Por todo lo anterior, solicitó la devolución del dinero para poder realizar la construcción del estanque y el sistema de riego con otra compañía. A su vez, indicó que el DACo podía realizar una inspección ocular por un experto. En la misma fecha, la *Querella* fue notificada al recurrente.

En respuesta, el 15 de mayo de 2023, el recurrente presentó su *Contestación a Querella* en la cual se limitó a negar las alegaciones de ésta y aclarar que el asunto fue atendido diligentemente, que llevó a un experto para verificar el área y, que dicho experto rindió un informe. Cabe precisar que, el referido informe se anejó a la *Contestación a la Querella.* En virtud de lo anterior, solicitó la desestimación de la *Querella.*

Así las cosas, el 2 de agosto de 2023, la parte recurrida presentó su *Querella Enmendada* a los fines de enmendar sus alegaciones.[2] Específicamente, argumentó que el 15 de febrero de 2021, otorgó un contrato con el recurrente con el propósito de

---

[1] Véase, págs. 116-153 del apéndice del recurso del recurrente.
[2] Íd., págs. 93-99.

instalar en el patio de su propiedad un sistema de riego y un estanque para peces. Señaló que, los trabajos incluían la instalación de todos los equipos necesarios para que el sistema de riego y el estanque funcionaran sin problemas. Además, planteó que fue el recurrente quien determinó cómo se realizaría el trabajo. Además, resaltó que, pagó la suma de $31,000.00 y, que dicho trabajo comenzó en julio de 2021 y terminó en febrero de 2022. Manifestó que, desde el momento de la instalación del sistema de riego y el estanque surgieron un sinnúmero de situaciones, por lo que realizaron las correspondientes reclamaciones al recurrente para que arreglara todos los trabajos deficientes. No obstante, indicó que, el recurrente presentaba excusas para no corregir los desperfectos.

Particularmente, manifestó que los problemas a causa de la mala construcción en el estanque y el sistema de riego eran los siguientes: escapes en las líneas de riego, sistema de riego mal programado, aguas estancadas en varias áreas del patio, estanque construido bajo el nivel de la tierra, cuando llovía se inundaba el estanque con agua y tierra lo que provocaba la muerte de los peces y las plantas que estaban en el estanque, filtraciones en el área de la fuente, la compra de una bomba adicional que tuvo un costo de $1,333.72, la bomba previamente instalada tenía que estar prendida veinticuatro (24) horas por falta de capacidad, la construcción de un muro adicional por la suma de $1,261.69 para remediar que el agua sucia entrara al estanque y, un sistema nuevo de luces UV por la cantidad de $800.00.

Explicó que, en vista de lo anterior tenían la intención de contratar a otra compañía para realizar el estanque y el sistema de riego, toda vez que el recurrente no realizó las reparaciones correspondientes. Enfatizó que, dicha compañía les notificó que corregir el trabajo del recurrente tenía un costo de $19,870.00. Por

todo lo anterior, solicitó la devolución de la suma de $31,000.00 pagados al recurrente, $1,333.72 por el reemplazo de la bomba, $1,261.69 por la construcción del muro alrededor del estanque, $800.00 por la instalación de las luces UV, $5,883.94 por los pagos a la Autoridad de Acueductos y Alcantarillados (AAA) y, una suma no menor de $30,000.00 como daños por las angustias mentales sufridas.

Posteriormente, el 23 de enero de 2024, el recurrente presentó su *Contestación a Querella Enmendada* en la cual negó las alegaciones de la *Querella* en su totalidad.[3] Además, reiteró que el asunto fue atendido diligentemente e inclusive, se llevó a un experto a verificar el asunto quien rindió un informe el cual se anejó a la presente contestación a la *Querella*. A su vez, reiteró sus defensas afirmativas. Luego, el 8 de abril de 2024, el recurrente presentó su *Moción Informativa Sobre Solicitud de Producción de Evidencia y/o Documentos a Utilizarse en la Vista Administrativa*.[4] En esencia, solicitó a la parte recurrida, que en el término de diez (10) días, le suministrara copia de la evidencia documental que obraba en su poder y que estuviese relacionada con la *Querella* de epígrafe, así como cualquier otra evidencia que se propusiera a presentar en la vista administrativa.

Cónsono con lo anterior, el 24 de abril de 2024, el recurrente presentó su *Moción Informativa Sobre Notificación de Prueba*.[5] Mediante ésta, notificó la prueba documental que iba a presentar en la vista administrativa. Dicha prueba consistía en lo siguiente: factura Garden Secret (sobre estanque y sistema de riego), mensajes de texto y fotos, certificación sobre consulta a estanque y factura Secret Garden (muro y otros). Por su parte, el 10 de mayo de 2024,

---

[3] Íd., págs. 84-88.
[4] Íd., págs. 78-80.
[5] Íd., págs. 70-75.

la parte recurrida presentó su *Moción con Relación a Prueba Documental.*[6] En ésta, notificó que la prueba documental a presentar en la vista administrativa era la siguiente: 21 videos, 13 fotos, evidencia de pago al recurrente, cotización del recurrente, tabla de Excel (relato de eventos) y facturas de la AAA. Luego, el 30 de mayo de 2024, el recurrente presentó su *Segunda Moción Informativa Sobre Notificación de Prueba.*[7] Añadió como prueba documental el diagrama de construcción y evidencia de la parte recurrida recibida en *pen drive.*

Celebrada las vistas administrativas el 1 de agosto de 2024 y el 24 de septiembre de 2024, el 17 de diciembre de 2024, el DACo emitió su *Resolución* que se notificó el 27 de diciembre de 2024, en la cual declaró Ha Lugar la *Querella.*[8] En primer lugar, realizó las siguientes determinaciones de hechos:

1. El Sr. César F. Cortés Cardona y la Sra. Caridad N. Galindo Portilla (los querellantes) son dueños de la propiedad sita en la Calle Rivera Ferrer #10, Urb. San Patricio, Guaynabo, Puerto Rico.

2. El querellado, es el Sr. Jorge Rojas Mercado h/n/c Secret Garden, con dirección en la Urbanización Estancias Plaza 15B-17, Bayamón, Puerto Rico.

3. Los querellantes contrataron el, 15 de febrero de 2021, los servicios del querellado para instalar en el patio de su propiedad un sistema de riego y un estanque para peces y plantas.

4. Los trabajos pactados entre el querellante y el querellado incluían la instalación de todos los equipos necesarios para que el sistema de riego y el estanque fuera uno funcional.

5. El querellado valoró el trabajo antes mencionado y la compra de los equipos, en la suma de $31,000.00 dólares. Cantidad de dinero que la parte querellante pagó en su totalidad.

6. Los trabajos se pautaron para comenzar en el mes de julio de 2021 y concluyeron en el mes de enero del 2022.

---

[6] Íd., págs. 61-63.
[7] Íd., págs. 30-61.
[8] Íd., págs. 9-17.

7. Así las cosas, la instalación del sistema de riego y la construcción del estanque presentaron defectos que limitaron el pleno uso de los mismos.

8. En atención a ello, la parte querellante le notificó al querellado los defectos presentes en la obra y le solicitó la corrección de los mismos.

9. A pesar de las reparaciones realizadas por la parte querellada, los sistemas continuaron confrontando serios defectos.

10. El día 10 de marzo de 2023, la parte querellante presentó ante este Departamento la querella de epígrafe.

11. En la Vista Administrativa quedó demostrado que todavía el sistema de riego no funciona de forma correcta.

12. El sistema de riego presenta escape en las líneas de distribución de agua. Asimismo, el sistema está mal programado ocasionando acumulación de agua en distintas partes del patio.

13. El estanque en cuestión no funciona adecuadamente, debido a que el querellado lo construyó bajo el nivel de la tierra. Esta situación ocasiona que cuando llueve la tierra del patio entra al estanque, se contamina el agua y afecta la salud de los peces.

14. Ante esta situación, la parte querellante tuvo que comprar una bomba adicional para el estanque, por la cantidad $1,333.72 dólares.

15. El querellado construyó un muro alrededor del estanque para remediar la entrada de agua de lluvia y tierra del patio.

16. La parte querellante le pagó al querellado por la construcción de dicho muro la suma de $1,261.69 dólares.

17. El material que el querellado le aplicó al muro del estanque para cubrir el cemento se encuentra despegado.

18. La construcción del muro alrededor del estanque fue deficiente.

19. Para controlar las filtraciones en el estanque, el querellado colocó un tubo que se suponía fuese temporero, pero a la fecha en que se celebró la Vista Administrativa el tubo permanece en el mismo lugar socavando el terreno del patio.

20. El sistema de luces UV seleccionado e instalado por el querellado tampoco tenía la capacidad para trabajar por el tamaño del estanque y hubo que comprar otro sistema, por el cual la parte querellante pagó $800.00 dólares.

21. Debido a que el sistema de riego se encontraba botando agua constantemente por la deficiente instalación, la factura por consumo de agua con la Autoridad de Acueductos y Alcantarillados (A.A.A) aumentó dramáticamente.

22. La parte querellante tuvo que recurrir a controlar el sistema de riego manualmente, lo que ayudó a controlar los problemas de filtraciones y, a su vez, los estancamientos de agua en la parte posterior. y delantera de la vivienda disminuyeron.

En virtud de las determinaciones de hechos formuladas y conforme al derecho aplicable, el DACo determinó que, entre las partes se formalizó un contrato de arrendamiento de servicios y que, mediante dicho contrato, se configuró un contrato accesorio de garantía con el recurrente. A base de ello, concluyó que, mediante el referido contrato, los recurridos pactaron con el recurrente la construcción de un estanque con el interés de hacer un ecosistema donde habitaran peces y plantas para el disfrute familiar. Asimismo, sostuvo que se pactó la instalación de un sistema de riego en la parte posterior y en la entrada de la residencia con el objetivo de mantener las áreas verdes en buenas condiciones y poder comenzar un huerto casero. Ahora bien, en cuanto al contrato accesorio de garantía determinó que, el recurrente tenía que responder por los defectos, acorde a la garantía ofrecida.

Por otro lado, resolvió que la prueba desfilada demostró que, la parte recurrida cumplió con su obligación contractual al pagar el precio solicitado. Sin embargo, explicó que el recurrente incumplió con su obligación contractual al no reparar los defectos en la obra pactada, a pesar de haber tenido oportunidad para reparar los defectos. Asimismo, concluyó que la prueba desfilada demostró que la parte recurrida incurrió en gastos adicionales, para tratar de corregir los defectos en los sistemas instalados. En vista de lo anterior, determinó que el recurrente incumplió crasamente con sus obligaciones contractuales para con la parte recurrida.

Así pues, el DACo indicó que, procedía la devolución del dinero invertido en la construcción en controversia, al amparo de nuestro Código Civil, que facultaba a la parte perjudicada a resolver el contrato por falta de cumplimiento o reclamar el cumplimiento específico y el resarcimiento de daños. Cónsono con lo anterior, el DACo le ordenó al recurrente a reembolsarle a la parte recurrida una suma total de $34,395.41, más el interés legal vigente. Indicó que la referida cantidad se desglosaba de la siguiente manera: (1) la suma de $31,000.00 por la construcción del estanque e instalación de sistema de riego; (2) la suma de $1,333.72 por el reemplazo de la bomba; (3) la suma de $1,261.69 por la construcción del muro alrededor del estanque y, por último; (4) la suma de $800.00 por el sistema de luces UV comprado en sustitución del seleccionado por el señor Rojas Mercado. En virtud de lo antes expuesto, declaró Ha Lugar la *Querella.*

Inconforme, el 7 de enero de 2025, el recurrente presentó su *Moción en Solicitud de Reconsideración.*[9] Alegó que, el DACo no llevó a cabo una inspección presencial de la instalación del estanque, lo cual les privó de la oportunidad de objetar o contradecir la determinación final a base de algún análisis oficial o informe técnico emitido por el propio foro. Sostuvo que, no existía un informe que sustentara las conclusiones de la *Resolución,* toda vez que no se llevó a cabo dicha inspección técnica. Además, resaltó que la *Resolución* se basó en el testimonio de la parte recurrida. Ello sin presentar evidencia pericial independiente que certificara defectos técnicos o incumplimientos contractuales reales y de magnitud suficiente para justificar la devolución total de las sumas reclamadas. Señaló que, dicho proceder era contrario al principio de valorar la totalidad de la evidencia.

---

[9] Íd., págs. 1-8

De otra parte, arguyó que el informe que presentó concluyó lo opuesto a lo sostenido en la *Resolución* emitida por el DACo. Particularmente, esbozó que la *Resolución* no abordaba ni evaluaba de forma detallada el contenido del informe técnico del señor Berríos ni su testimonio, por lo que se encontraba en un estado de indefensión. En virtud de lo anterior, solicitó que el DACo reconsiderara la *Resolución* dictada. Sin embargo, el DACo no atendió dicha moción.

Aún inconforme, el 20 de febrero de 2025, el recurrente presentó el recurso de epígrafe y formuló los siguientes señalamientos de error:

> **Erró el DACo en su Resolución al fundamentar su decisión principalmente en el testimonio de la parte querellante (apelada-recurrida) y al no mencionar ni analizar adecuadamente el informe pericial y el testimonio de la parte querellada (apelante-recurrente).**
>
> **Erró el DACO en su Resolución al no aplicar correctamente los principios establecidos en el Código Civil relacionados con la resolución de contratos y el cumplimiento de obligaciones contractuales, y al no considerar adecuadamente la condición actual de la obra realizada y el hecho de que el sistema de riego y el estanque aún estaban en uso, lo que implicaría un enriquecimiento injusto de parte de los querellantes (apelados-recurridos).**

Atendido el recurso, el 24 de febrero de 2024, emitimos una *Resolución* concediéndole a las partes el término de quince (15) días para presentar una transcripción de la prueba oral estipulada. Oportunamente, las partes sometieron la transcripción de la prueba oral estipulada. Además, el 8 de abril de 2025, le concedimos a la parte recurrente un término, de estimarlo necesario, para presentar un alegato suplementario especificando las páginas, párrafos y líneas exactas de la transcripción que sustentaran sus planteamientos. Así las cosas, la parte recurrente presentó un *Alegato Suplementario* con las especificaciones solicitadas. Cabe precisar que, a la parte recurrida también le concedimos un término

para presentar su alegato en oposición especificando las páginas, párrafos y líneas exactas de la transcripción que sustentaran sus planteamientos y no lo hizo. Por consiguiente, declaramos perfeccionado el presente recurso y estando en posición de resolver, procedemos a así hacerlo. *Veamos.*

## II.

### -A-

La doctrina de revisión judicial nos encomienda "examinar si las decisiones de las agencias administrativas fueron hechas dentro de los poderes delegados y son compatibles con la política pública que las origina". *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018). Al efectuar tal encomienda, debemos "otorgar amplia deferencia a las decisiones de las agencias administrativas". *Graciani Rodríguez v. Garaje Isla Verde,* 202 DPR 117, 126 (2019).

La normativa jurisprudencial ha reiterado que existe en el derecho puertorriqueño una presunción de legalidad y corrección a favor de los procedimientos y decisiones realizadas por las agencias administrativas. *Rolón Martínez v. Supte. Policía, supra*, pág. 35. Lo anterior responde a la experiencia y pericia que se presume tienen dichos organismos para atender y resolver los asuntos que le han sido delegados. Íd.

Así, el estado de derecho vigente nos impone otorgarle deferencia a la agencia administrativa, siempre que la parte que la impugne no demuestre evidencia suficiente que rebata la presunción de legalidad y corrección. *Graciani Rodríguez v. Garaje Isla Verde, supra*, pág.128. Por lo tanto, al realizar nuestra función revisora debemos enfocarnos en determinar si la agencia administrativa: (1) erró en aplicar la ley; (2) actuó arbitraria, irrazonable o ilegalmente; y (3) si lesionó derechos constitucionales fundamentales. *Torres Rivera v. Policía de PR*, 196 DPR 606, 627-628 (2016).

De este modo, si al realizar nuestra función revisora no nos encontramos ante alguna de las situaciones previamente mencionadas, tenemos el deber de validar la determinación realizada por la agencia administrativa. Íd. Ello, aun cuando exista más de una interpretación posible en cuanto a los hechos. Íd., pág. 627. Ahora bien, es preciso recordar que las conclusiones de derecho, por el contrario, serán revisables en todos sus aspectos. Sección 4.5 de la Ley Núm. 38-2017, según enmendada, mejor conocida como *Ley de Procedimiento Administrativa Uniforme del Gobierno de Puerto Rico* (LPAUG), 3 LPRA sec. 9675.

**-B-**

Las obligaciones surgen de la ley, los contratos, los cuasicontratos, los actos lícitos, las acciones u omisiones en la cual medie culpa o negligencia y cualquier otro acto idóneo para producirlas, conforme con el ordenamiento jurídico. Art. 1063 del Código Civil de 2020, 31 LPRA sec.8984. En lo pertinente al asunto ante nos, los contratos son un negocio jurídico bilateral en el cual dos o más partes prestan su consentimiento para crear, regular, modificar o extinguir obligaciones. Art. 1230 del Código Civil de 2020, 31 LPRA sec. 9751. Los contratos son negocios jurídicos desde que las partes manifiestan su consentimiento sobre el objeto y la causa. Art. 1237 del Código Civil de 2020, 31 LPRA sec. 9772. Aquellas obligaciones derivadas de un contrato tendrán fuerza de ley entre las partes, sus sucesores y ante terceros en la forma que dispone la ley. Art. 1233 del Código Civil 2020, 31 LPRA sec. 9754.

En lo que compete a esta controversia, entre los contratos que regulan nuestro Código Civil, se encuentra el contrato de arrendamiento de obras y servicios. Específicamente, el Artículo 1367 del Código Civil de 2020, 31 LPRA sec. 10251, dispone que en el contrato de obra "el contratista se obliga, sin estar subordinado al comitente, a realizar una obra material o intelectual por el pago

de un precio". Cónsono con lo anterior, en el caso de *Constructora Bauzá, Inc. v. García López*, 129 DPR 579, 591-592 (1991), el Tribunal Supremo de Puerto Rico resolvió que en este tipo de convenio "se promete un resultado [la obra hecha] con independencia del trabajo [...] necesario para realizarlo. Íd, pág. 592.

En este contrato, el comitente está obligado a lo siguiente:

a. pagar el precio de la obra;

b. proporcionar la colaboración necesaria para que la obra pueda realizarse; y

c. recibir la obra, cuando esta ha sido ejecutada conforme a lo convenido. Art. 1374 del Código Civil 2020, 31 LPRA sec. 10271.

Entre las obligaciones del contratista, se encuentran las siguientes:

a. **ejecutar la obra según lo convenido y los conocimientos que exige el arte, la ciencia o la técnica correspondiente para la ejecución;**

b. no variar la obra convenida, salvo cuando las modificaciones son necesarias para ejecutarla conforme a las reglas del arte, la ciencia o la técnica que corresponda, siempre que las modificaciones sean imprevisibles en el momento de la contratación;

c. proveer al comitente la información esencial sobre la ejecución;

d. comunicar al comitente cualquier variación necesaria y el costo estimado de esta;

e. advertir al comitente sobre la mala calidad o inadecuación de los materiales que ha provisto;

f. aportar, excepto cuando se haya pactado de otro modo, los materiales que se utilizan corrientemente en la ejecución;

g. ejecutar la obra dentro del tiempo convenido o en el que razonablemente corresponda;

h. permitir que el comitente, siempre que no perjudique el desarrollo de los trabajos, verifique a su costa el estado de avance, así como la calidad de los materiales utilizados y los trabajos efectuados;

i. garantizar la solidez de la obra contra la ruina por el término de diez (10) años desde la entrega, cuando esta se ha construido en un inmueble y deba tener larga duración. Igual responsabilidad tendrá el promotor de la obra. El arquitecto responde si la ruina se debe a vicios del suelo o la dirección; y

        j. **garantizar que la obra sirve para el destino previsto**. (Énfasis suplido) Art. 1375 del Código Civil 2020, 31 LPRA sec. 10272.

Por tratarse el arrendamiento de obras de un contrato bilateral, consensual y oneroso, **el incumplimiento de una parte le da derecho a la otra a resolver el contrato o a exigir su cumplimiento específico, más la indemnización por los daños y perjuicios causados.** (Énfasis suplido) *Constructora Bauzá, Inc. v. García López, supra,* pág. 592-593. Respecto a la resolución del contrato, el Tribunal Supremo estableció que cuando nos enfrentamos a un incumplimiento parcial o defectuoso de una obligación bilateral, se justifica el ejercicio de la acción de resolución del contrato. *Álvarez v. Rivera,* 165 DPR 1, 20 (2005). Entiéndase, el perjudicado en un contrato, puede exigir el cumplimiento de la obligación en la forma específicamente debida o la resolución de este; solicitar el cumplimiento mediante la obtención del equivalente económico de la prestación debida y, a la vez, pedir la indemnización de daños y perjuicios resultantes de la repercusión del incumplimiento en su patrimonio. *Master Concrete Corp. v. Fraya, S.E.,* 152 DPR 616, 625 (2000). Ahora bien, la resolución del contrato únicamente procede cuando hay una frustración de la finalidad contractual. Íd.

### III.

En el recurso de revisión judicial, el recurrente nos solicitó la revocación de la *Resolución* que emitió el DACo el 17 de diciembre de 2024. En su primer señalamiento de error, sostuvo que el DACo incidió al fundamentar su decisión principalmente en el testimonio de la parte recurrida y al no mencionar ni analizar adecuadamente el informe pericial y su testimonio. Por otro lado, en su segundo señalamiento de error, planteó que el DACo erró al no aplicar correctamente los principios establecidos en el Código Civil relacionados con la resolución de contratos y el cumplimiento de

obligaciones contractuales, al no considerar adecuadamente la condición actual de la obra realizada, y el hecho de que el sistema de riego y el estanque aún estaban en uso, lo que implicaría un enriquecimiento injusto de la parte recurrida.

Discutiremos los señalamientos de error en conjunto por estar íntimamente relacionados entre sí. En el presente caso, el DACo celebró una vista administrativa el 1 de agosto de 2024 y el 24 de septiembre de 2024. En estas vistas testificó la señora Galindo y el recurrente. Surge de la transcripción de la prueba oral ante nuestra consideración que, el recurrente admitió que con lo único que podía evidenciar su negativa a las alegaciones plasmadas en la *Querella* presentada era con su testimonio y con un informe que presentó junto a su contestación a la querella que preparó el Sr. Ángel Roberto Berrios (señor Berrios), técnico de piscina. Particularmente, en la vista administrativa que se celebró el 24 de septiembre de 2024, el representante legal de los recurridos interrogó al recurrente en cuanto a lo antes mencionado y éste declaró lo siguiente:

> P: Así que más allá de lo que usted dice, usted no puede evidenciar nada de lo que usted alega. ¿Correcto? Solamente que usted lo dice. ¿Correcto?
>
> R: Bueno, está la evidencia de… que referí.
>
> P: ¿Correcto?
>
> R: Es correcto.
>
> P: ¿Quién le dijo a usted, y le pregunto, ¿quién le dijo a usted que Ángel Roberto es perito en este caso?
>
> R: César Cortés y Nohelia
>
> P: No. Usted en este caso. ¿Quién le dijo a usted que él era perito en este caso?
>
> R: Bueno, me lo dijo César y Nohelia.
>
> P: Usted
>
> R: Yo tengo el número para llamarlo.
>
> P: Oiga, yo estoy hablando de este caso. ¿Aquí en este caso se ha presentado Ángel Roberto como perito?

R: No.

P: No, ¿verdad? Así que, en este caso usted no tiene perito. ¿Correcto?
R: Según usted, licenciado.

P: No, no. Le estoy preguntando. Sígame quién es el perito que va a declarar aquí.

R: No, no va a declarar.

P: ¿Verdad que no hay? ¿Perdón?

R: No va a declarar ninguno.[10]

Como podemos observar, a pesar de que el recurrente presentó el informe del señor Berrios, no lo trajo como testigo en la vista para que testificara en cuanto al informe que preparó. Además, éste admitió que la única prueba que tenía para negar las alegaciones en su contra era su propio testimonio. Además, resaltamos que, en su contestación a la querella el recurrente únicamente expresó que negaba la totalidad de la querella, ya que, según él, el asunto fue atendido diligentemente. No presentó ningún otro argumento para sostener su negativa ante los planteamientos de la parte recurrida.

En vista de lo anterior, para llegar a una determinación en cuanto a la presente controversia, el DACo tenía ante su consideración únicamente la prueba documental estipulada entre las partes, la prueba documental que presentó la parte recurrida y el testimonio de la señora Galindo y el del recurrente. Así pues, a base de la prueba documental que se presentó en la vista y los testimonios ofrecidos por las partes, el DACo determinó que entre las partes se formalizó un contrato de arrendamiento de servicios, mediante el cual se pactó la construcción de un estanque para el disfrute familiar y la instalación de un sistema de riego en la parte posterior y en la entrada de la residencia, con el objetivo de

---

[10] Véase, pág. 23, líneas 9-25 y pág. 24, líneas 1-8 de la transcripción de la prueba oral de la vista del 24 de septiembre de 2024.

mantener las áreas verdes en buenas condiciones y poder comenzar un huerto casero. Afirmó que la prueba desfilada demostró que, la parte recurrida cumplió con su obligación contractual al pagar el precio solicitado por los servicios antes descritos.

A su vez, el DACo resolvió que, mediante el contrato de servicios, se configuró un contrato accesorio de garantía con el recurrente mediante el cual éste último se obligó a responder por los defectos, acorde a la garantía ofrecida. Habiendo evaluado la prueba desfilada, el DACo sostuvo que el recurrente incumplió con su obligación contractual al no reparar los defectos en la obra pactada, a pesar de haber tenido oportunidad para hacerlo. Asimismo, concluyó que la parte recurrida incurrió en gastos adicionales para tratar de corregir los defectos en los sistemas instalados. En vista de lo anterior, el DACo le ordenó al recurrente a devolverle a los recurridos el dinero invertido en la construcción en controversia y a reembolsarles por lo gastos incurridos para corregir los defectos de los sistemas instalados.

Dicho lo anterior, es evidente que el DACo le dio entera credibilidad al testimonio de la señora Galindo. Debemos recordar que las determinaciones de hechos basadas en la apreciación de la prueba oral y la credibilidad de los testigos que realicen los organismos administrativos merecen la mayor deferencia judicial, pues son éstos los que tuvieron la oportunidad de evaluar el comportamiento de los testigos y sus reacciones durante la vista administrativa. Ahora bien, es preciso recordar que, por el contrario, las conclusiones de derecho serán revisables en todos sus aspectos. A tales efectos, si luego de haber revisado las conclusiones de derecho determinamos que hay ausencia de pasión, prejuicio, parcialidad o error manifiesto debemos validar la determinación realizada por la agencia administrativa.

Conforme al derecho que antecede, en los contratos de arrendamiento de obras y servicios, los contratistas están obligados a ejecutar la obra según lo convenido y los conocimientos que exige el arte, la ciencia o la técnica correspondiente para la ejecución. Art. 1375 del Código Civil 2020, *supra.* Además, están obligados a garantizar que la obra sirva para el destino previsto. Íd. El incumplimiento con lo antes expuesto, le da derecho al comitente a exigir el cumplimiento de la obligación en la forma específicamente debida o la resolución de este o solicitar el cumplimiento mediante la obtención del equivalente económico de la prestación debida y, a la vez, pedir la indemnización de daños y perjuicios. *Master Concrete Corp. v. Fraya, S.E.*, supra, pág. 625.

Como mencionamos anteriormente, al escuchar el testimonio de las partes y al evaluar la prueba documental, el DACo determinó que las obras realizadas por el señor Rojas Mercado fueron defectuosas y que éste último se negó a atender dichos defectos por lo que la parte recurrida tuvo que incurrir en gastos por el reemplazo de la bomba, por la construcción del muro alrededor del estanque, y por el sistema de luces UV comprado en sustitución del seleccionado por el recurrente. Así pues, ordenó la devolución del equivalente económico de la prestación debida y el pago de los gastos incurridos por la parte recurrida para corregir los defectos de los sistemas instalados.

Habiendo evaluado el expediente en su totalidad y el derecho aplicable, resolvemos que las conclusiones de derecho realizadas por el DACo carecen de pasión, prejuicio, parcialidad o error manifiesto por lo que validamos el dictamen recurrido. En el presente caso, el recurrente estaba obligado a ejecutar las obras según lo convenido y a garantizar que éstas sirvieran para el destino previsto. Sin embargo, luego de que el recurrente terminó la construcción del estanque y la instalación del sistema de riego, se presentaron varios

defectos en las obras por lo que no estaban funcionando según su destino previsto. El recurrente tuvo la oportunidad de corregir los defectos, pero no lo hizo por lo que los recurridos tuvieron que incurrir en gastos para corregirlos. Lo anterior demuestra un claro incumplimiento por parte del recurrente con las exigencias que dispone el Código Civil en cuanto a las obligaciones de un contratista en los contratos de arrendamiento de obras y servicios. Así pues, no cabe duda de que como muy bien resolvió el DACo, los recurridos tenían derecho a la obtención del equivalente económico de la prestación debida y, a la indemnización de daños y perjuicios.

Por último, el recurrente argumentó que devolverle a la parte recurrida el equivalente económico de las obras realizadas sería un enriquecimiento injusto, ya que el sistema de riego y el estanque aún estaban en uso. Puntualizamos que, el recurrente no apoyó su alegación responsiva en la doctrina de enriquecimiento injusto, sino que como mencionamos anteriormente, éste se limitó a argumentar que no le correspondía responder por las alegaciones en su contra, ya que el asunto en controversia fue atendido diligentemente. Tampoco surge de la transcripción de la prueba oral de las vistas administrativas que el recurrente haya pasado prueba sobre los cinco (5) requisitos que exige la jurisprudencia para que se dé la doctrina de enriquecimiento injusto.[11] Es decir, el recurrente no probó lo siguiente: (1) la existencia de un enriquecimiento; (2) un empobrecimiento correlativo; (3) una conexión entre el empobrecimiento y el enriquecimiento; (4) la falta de causa que justifique el enriquecimiento; y, por último (5) la inexistencia de un precepto legal que excluya la aplicación del enriquecimiento sin causa. En el presente caso, el recurrente presentó la alegación de enriquecimiento injusto por primera vez en la etapa apelativa

---

[11] Véase, *SLG Sánchez v. SLG Valentín*, 186 DPR 503, 516 (2012).

mediante un señalamiento de error. Por los motivos antes expuestos, no se cometieron los errores señalados.

**IV.**

Por los fundamentos antes expuestos, ***confirmamos*** el dictamen recurrido.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones