<table>
<tr><td colspan="3" align="center">Estado Libre Asociado de Puerto Rico<br>TRIBUNAL DE APELACIONES<br>PANEL II</td></tr>
<tr>
<td>ELY B. RIVERA MARRERO<br><br>Parte Recurrente<br><br>v.<br><br>DEPARTAMENTO DE ASUNTOS DEL CONSUMIDOR; WILLIAM ALICEA RODRÍGUEZ<br><br>Parte Recurrida</td>
<td>TA2025RA00287</td>
<td>*Revisión Administrativa* procedente del Departamento de Asuntos del Consumidor<br><br>Caso Núm. SAN-2024-0018278<br><br>Sobre: Construcción</td>
</tr>
</table>

Panel integrado por su presidenta la Jueza Cintrón Cintrón, el Juez Rodríguez Flores y la Jueza Díaz Rivera.

Rodríguez Flores, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 25 de noviembre de 2025.

La Sra. Ely B. Rivera Marrero (parte recurrente o señora Rivera Marrero) presentó, por derecho propio, el presente recurso de *Revisión Administrativa* y solicita que modifiquemos la *Resolución* emitida el 21 de agosto de 2025, y notificada el 16 de septiembre de 2025, por el Departamento de Asuntos del Consumidor (DACo).[1] Mediante el referido dictamen, el foro administrativo declaró Ha Lugar a la *Querella* instada por la señora Rivera Marrero y ordenó al Sr. William Alicea Rodríguez (parte recurrida o señor Alicea Rodríguez) a reembolsar a la parte recurrente la cantidad de $4,583.11 por concepto de materiales.

En su recurso, la señora Rivera Marrero alega que el remedio concedido por la agencia fue uno incompleto, ya que ordenó el reembolso del costo de los materiales, pero no así del dinero que pagó por concepto de mano de obra.

---

[1] *Resolución*, SUMAC TA, Apéndice del recurso, Entrada 2.

Evaluado el recurso y los documentos unidos a éste, así como la copia certificada del expediente administrativo presentada por el DACo, resolvemos.

**I.**

El 10 de noviembre de 2023, las partes suscribieron un contrato mediante el cual la señora Rivera Marrero contrató los servicios del señor Alicea Rodríguez para la remoción e instalación de losas de piso nuevas en su residencia.[2] Por estas labores, las partes pactaron el precio total de $5,500.00, el cual sería satisfecho a través del pago de la mitad antes de comenzar la obra y el restante al culminarla. Además, acordaron que la señora Rivera Marrero proveería los materiales a utilizarse.

El 23 de febrero de 2024, la señora Rivera Marrero incoó una querella ante DACo en contra del señor Alicea Rodríguez.[3] En esta, alegó que desde el inicio de las obras señaló deficiencias en la instalación de las losas que no fueron corregidas por el contratista. Afirmó que notó desigualdad en las uniones de estas y en el color de la lechada, además de desniveles y patrones de manchas en la porcelana. Manifestó a su vez que el señor Alicea Rodríguez utilizó ácido en alto porcentaje lo que ocasionó que las lámparas de la sala y el comedor se oxidaran. Adujo que, luego de insistir en las faltas, el contratista abandonó la obra condicionando su regreso a que esta aceptara el trabajo ya realizado. Por ello, solicitó que se le repusiera el material utilizado —a saber, losas, pegas, lechada y niveladores— así como el reembolso de lo pagado al señor Alicea Rodríguez, más los bienes dañados.

Luego, el 16 de diciembre de 2024, la señora Rivera Marrero presentó una enmienda a su querella para unir a su reclamación los

---

[2] *Contrato por servicios profesionales, Íd.*, Entrada 3, pág. 1.
[3] *Formulario presentación querella arrendamiento obras y servicios, Íd.*, Entrada 3, págs. 9-11.

daños ocasionados por el mal manejo de un *"chipping hammer"*, el cual alegó provocó una perforación en una pared de su residencia y filtraciones, así como que se le repusiera una máquina de presión.[4]

El 22 de enero de 2025, el señor Alicea Rodríguez instó su contestación a la querella.[5] En su escrito, manifestó estar en desacuerdo con las reclamaciones en su contra y replicó que los trabajos no pudieron ser completados debido a dificultades ocasionadas por las losas. Sostuvo que en el momento en que comenzó a tener dificultades le explicó la situación a la señora Rivera Marrero y le mostró la diferencia del tamaño de las piezas. Expresó que, luego de que esta se comunicara con la tienda donde adquirió las mismas, le brindó otras instrucciones, pero surgieron nuevas desavenencias en cuanto al color de la lechada, lo que provocó que decidiera retirarse y no continuar con la instalación de las losas. Añadió además que al momento de retirarse de la residencia la señora Rivera Marrero le adeudaba la cantidad de $1,875.00.

El 31 de enero de 2025, DACo notificó a las partes una *Citación de Inspección* para el 13 de marzo de 2025 en la Urb. Miraflores 4-29 Calle 20 en Bayamón.[6] Ambas partes estuvieron presentes en la inspección.

Posteriormente, el 12 de mayo de 2025, el inspector emitió su *Informe de Inspección*[7] en el que señaló que las losas instaladas en la residencia no reflejaban desperfecto alguno, solo aplicación de lechada adicional en áreas aisladas. El inspector estimó que los trabajos fueron completados en un 85%. Asimismo, incluyó una nota en la que indicó que no pudo corroborar las alegaciones de la señora Rivera Marrero de que las losas no habían sido instaladas

---

[4] *Enmienda, Íd.*, Entrada 3, pág. 12.
[5] *Contestación, Íd.*, Entrada 6, págs. 4-6.
[6] Véase, expediente electrónico del caso, SUMAC TA, Entrada 6, Anejo 6, pág. 6.
[7] *Informe de inspección*, SUMAC TA, Apéndice del recurso, Entrada 3, págs. 13-14.

siguiendo el patrón de diseño, ni alineando las flechas direccionales, debido a que las losas estaban pegadas con lechada. En cuanto al diseño de las losas, manifestó que, aunque éstas no eran idénticas, mostraban similitud en el patrón unas con otras. El inspector consignó en su *informe* que no incluyó un estimado por corrección de desperfectos.

En desacuerdo con el informe, el 28 de mayo de 2025, la señora Rivera Marrero presentó sus *Objeciones al informe de inspección*.[8] Allí manifestó que la inspección se realizó sin hacer uso de materiales relevantes, tales como una cinta métrica, un láser de medición, niveles u otros equipos técnicos que le permitieran al inspector comprender todos los detalles que fueron discutidos. La parte recurrente acompañó su objeción con un reporte efectuado por el Sr. Nelson J. González Cruz, inspector de construcción, sobre los trabajos de instalación de losa objeto de la querella.[9] Su evaluación reveló que el contratista Alicea Rodríguez no instaló las losas que van debajo del gabinete de cocina, no siguió el patrón de diseño de las losas; y encontró losas huecas, con escalones y desalineadas. También se indicó que la losa de piso tiene una inclinación hacia la pared lateral derecha de la casa. A su vez, se precisó que faltaba un 24% para finalizar la obra. El reporte del Sr. Nelson J. González Cruz concluye que los trabajos realizados por el señor Alicea Rodríguez son deficientes y que dicho contratista cobró el 76% de la obra sin haberla terminado.

Por su parte, el señor Alicea Rodríguez también presentó objeciones al informe mediante un escrito intitulado *Aclaración al Informe de Inspección*.[10] En este puntualizó que la actitud de la señora Rivera Marrero no le permitió completar sus servicios y que

---

[8] *Objeciones al informe de inspección, Íd.*, Entrada 3, pág. 15.
[9] *Reporte de Trabajos de Instalación de Losa de Piso Interior en la Residencia de la Sra. Ely B. Rivera Marrero, Íd.*, Entrada 4.
[10] *Aclaración al informe de inspección, Íd.*, Entrada 6, pág. 3.

realizó una serie de trabajos adicionales, fuera de contrato, valorados en $500.00, que ésta se negó a pagar.

Así las cosas, el 31 de julio de 2025, DACo emitió una orden de señalamiento de vista administrativa mediante videoconferencia para el 19 de agosto de 2025.[11]

Celebrada la vista, el 21 de agosto de 2025, el foro administrativo emitió la *Resolución* aquí recurrida.[12] Mediante el referido dictamen, DACo declaró Ha Lugar a la querella y le ordenó al señor Alicea Rodríguez reembolsar la cantidad de $4,583.11 por concepto de materiales utilizados. A su vez, formuló las siguientes determinaciones de hechos:

1. El 10 de noviembre de 2023 las partes firmaron un contrato mediante el cual la querellante contrató los servicios del querellado para la remoción e instalación de losas nuevas en la residencia de la querellante.

2. Por las labores se pactó el precio de $5,500.00. La querellante debía comprar todos los materiales a utilizarse. La querellante pagó al querellado $4,000.00.

3. Por los materiales la querellante pagó la cantidad de $4,583.11.

4. Al concluir el primer día de trabajo la querellante removió las losas instaladas por entender que el trabajo no era aceptable.

5. El querellado le indicó a la querellante que no tenían los separadores para las losas, pero esto no la había sido informado a la querellante previo al inicio de los trabajos. La querellante compró los separadores.

6. Desde el inicio la querellante señalaba deficiencias en la instalación de las losas y los zócalos porque estaban descuadradas.

7. Al concluir la instalación de las losas en el área de la sala, comedor y cocina todo teníamos (sic) porque el querellado había utilizado un ácido muy fuerte. Las lámparas, la campana de la estufa y la nevera tenían moho.

8. Ninguna de las losetas instaladas coincidía en las esquinas una con otra. Las losas por instalarse

---

[11] Véase, expediente electrónico del caso, SUMAC TA, Entrada 6, Anejo 2, págs. 12-20.

[12] *Resolución*, SUMAC TA, Apéndice del recurso, Entrada 2.

tenían al dorso unas flechas que indicaban la dirección en que deberían colocarse.

9. El 13 de marzo de 2025 este departamento llevó a cabo una inspección en la residencia de la querellante. El informe de inspección fue notificado a las partes el 13 de mayo de 2025.

10. Según el inspector del departamento las losas no reflejan desperfecto alguno salvo aplicación de lechada adicional en áreas aisladas. Nota además que los trabajos fueron completados en un 85% aproximadamente.

11. La notificación del informe de inspección indica que de no estar de acuerdo con este las partes podrán presentar su objeción por escrito en un término de 15 días. Cónsono con lo anterior la querellante presentó su objeción al informe de inspección el 28 de mayo de 2025.

12. Junto con su objeción la querellante acompañó un informe hoy preparado por el señor Nelson González Cruz, Inspector de Construcción.

13. Surge del informe preparado por el Sr. Cruz, el cual consta de 13 páginas incluyendo descripción general evaluación de los trabajos fotografías y planos o croquis del área trabajada, que los trabajos realizados fueron deficientes. Había losas huecas, la mayoría de las losas tienen escalones o desniveles, no se siguió el patrón de las losas y las losas no están alineadas entre otros.

14. De las fotografías que acompañan el informe preparado por el Sr. Cruz se puede constatar fácilmente lo descrito por éste.

15. Posteriormente el 13 de julio de 2025, a la querellante se le cayó un envase de cristal en un área donde ya habían sido instalados las losas por el querellado y una de las losas se rompió dejando un hueco por el cual cabía el dedo de la querellante y todo por debajo estaba hueco.

16. La querellante no desea que el querellado termine las labores que faltaban por completar en su hogar, que se limitaban a la instalación de losas en el área de los cuartos. Solicita que le sea reembolsado el material perdido más lo pagado al querellado y los bienes dañados como las lámparas y otros.

17. La querellante no presentó evidencia del costo de los accesorios y enseres dañado[s] con moho.

DACo concluyó que las partes habían suscrito un contrato para la remoción e instalación de losas en la residencia de la señora Rivera Marrero, más la labor realizada por el señor Alicea Rodríguez

fue una deficiente, según surgía del reporte presentado por la querellante como objeción al informe realizado por la agencia. El DACo coligió que el informe del Sr. Nelson González Cruz era mucho más amplio, completo y abarcador que el realizado por el inspector de la agencia. Cónsono con ello, resolvió que, para corregir las deficiencias en la labor de instalación de las losas, el señor Alicea Rodríguez debía reembolsar a la señora Rivera Marrero lo pagado por ésta por concepto de los materiales utilizados.

En desacuerdo con la determinación, el 16 de septiembre de 2025, la señora Rivera Marrero presentó una moción de reconsideración ante el foro administrativo.[13] En ella, adujo que el remedio concedido por la agencia fue uno incompleto, pues ordenó el reembolso del costo de los materiales, pero no así del dinero que ella pagó por concepto de mano de obra. La moción de reconsideración fue rechazada de plano al no ser acogida por la agencia dentro del término establecido.

Insatisfecha aún, el 14 de octubre de 2025, la señora Rivera Marrero acudió ante este foro revisor mediante *Recurso de Revisión Administrativa,* señalando que el foro administrativo cometió el siguiente error:

> La licenciada que presidió el proceso administrativo incurrió en error de derecho y falta de congruencia decisoria, al emitir una resolución parcial e incompleta, reconociendo únicamente el valor de los materiales, sin considerar los daños, perjuicios y gastos probados con evidencia documental, fotográfica y pericial.[14]

En cumplimiento con nuestras resoluciones emitidas a tales efectos, el 28 de octubre de 2025, el DACo presentó la copia certificada del expediente SAN-2024-0018278.

Tras un estudio detenido del expediente administrativo, y transcurrido el termino reglamentario sin que la parte recurrida

---

[13] *Moción de Reconsideración, Íd.,* Entrada 6, pág. 1.
[14] *Recurso de Revisión Administrativa,* supra, pág. 6.

hubiese presentado su alegato en oposición, damos por perfeccionado el recurso sin el beneficio de su comparecencia.

**II.**

**A.**

Es norma firmemente establecida que los tribunales apelativos han de conceder gran consideración y deferencia a las decisiones de los organismos administrativos. Ello, dado que las agencias administrativas cuentan con vasta experiencia y conocimiento especializado en cuanto a los asuntos que les han sido encomendados.[15]

Como resultado, la decisión de una agencia administrativa gozará de una presunción de legalidad y corrección que será respetada, siempre que la parte que la impugna no produzca evidencia suficiente para rebatirla.[16]

En cuanto a las determinaciones de hecho que realiza una agencia, éstas serán sostenidas por el tribunal si se basan en evidencia sustancial que obra en el expediente administrativo.[17] Por evidencia sustancial se entiende "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión".[18] Por lo tanto, la parte afectada por la decisión administrativa deberá reducir el valor de la evidencia impugnada o demostrar la existencia de otra prueba que sostenga que la actuación del ente administrativo no estuvo basada en evidencia sustancial.[19]

---

[15] *Moreno Lorenzo y otros v. Depto. Fam.*, 207 DPR 833, 839 (2021), citando a *OCS v. Universal*, 187 DPR 164, 178 (2012); *The Sembler Co. v. Mun. de Carolina*, 185 DPR 800 (2012); *Pagán Santiago, et al. v. ASR*, 185 DPR 341, 358 (2012).

[16] *Transp. Sonell, LLC v. Jta. Subastas ACT*, 214 DPR 633 (2024); *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 215 (2012).

[17] Sec. 4.5 de la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU), Ley Núm. 38-2017, 3 LPRA sec. 9675.

[18] *Rolón Martínez v. Superintendente*, 201 DPR 26, 36 (2018); *González Segarra et al. v. CFSE*, 188 DPR 252, 277 (2013); *Otero v. Toyota*, 163 DPR 716, 728-729 (2005).

[19] *Otero v. Toyota*, supra, pág. 728.

Ahora bien, respecto a las conclusiones de derecho de las decisiones de las agencias administrativas, la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU), Ley Núm. 38-2017, señala que éstas pueden ser revisadas en todos sus aspectos por el tribunal.[20]

Al respecto, recientemente, en *Vázquez v. Consejo de Titulares*[21], el Tribunal Supremo hizo eco de la decisión del foro federal en el caso *Loper Bright Enterprises v. Raimondo*[22], y determinó que la interpretación de la ley es una tarea que corresponde inherentemente a los tribunales. En *Vázquez,* el Tribunal Supremo enfatizó la necesidad de que los foros judiciales, en el ejercicio de su función revisora, actúen con el rigor que prescribe la LPAU, *supra.* Puntualizó que, al enfrentarse a un recurso de revisión judicial proveniente de una agencia administrativa, será el deber de los tribunales revisar las conclusiones de derecho en todos sus aspectos. Con ello, nuestro Tribunal Supremo pautó el fin de la deferencia absoluta a las apreciaciones de derecho arribadas por las agencias administrativas.[23] En fin, delimitó que la interpretación de la ley es una tarea que le corresponde a los tribunales y como corolario, los tribunales deben revisar las conclusiones de derecho en todos sus aspectos. Ello, como mecanismo interpretativo del poder judicial.[24]

Ahora bien, lo anterior "no implica que los tribunales revisores tienen la libertad absoluta de descartar libremente las conclusiones e interpretaciones de la agencia".[25] Consecuentemente, cuando un tribunal llega a un resultado distinto al de la agencia, éste debe

---

[20] Sec. 4.5 de la *Ley de Procedimiento Administrativo Uniforme* (LPAU), Ley Núm. 38-2017, 3 LPRA sec. 9675.
[21] *Vázquez v. Consejo de Titulares*, 2025 TSPR 216, 216 DPR ___ (2025).
[22] *Loper Bright Enterprises v. Raimondo*, ___ U.S. ___, 144 S.Ct. 2244, 219 L.Ed.2d 832 (2024).
[23] *Vázquez v. Consejo de Titulares*, supra.
[24] *Íd.*
[25] *Otero v. Toyota*, supra, pág. 729.

determinar si la divergencia es a consecuencia de un ejercicio razonable y fundamentado de la discreción administrativa, ya sea por la pericia, por consideraciones de política pública o en la apreciación de la prueba.[26] Dicho de otro modo, "[e]l tribunal podrá sustituir el criterio de la agencia por el propio solo cuando no pueda hallar una base racional para explicar la decisión administrativa".[27]

Por consiguiente, la deferencia concedida a las agencias administrativas únicamente cederá cuando: (1) la determinación administrativa no esté basada en evidencia sustancial; (2) el organismo administrativo haya errado en la aplicación o interpretación de las leyes o los reglamentos que se le ha encomendado administrar; (3) cuando el organismo administrativo actúe arbitraria, irrazonable o ilegalmente, al realizar determinaciones carentes de una base racional; o, (4) cuando la actuación administrativa lesione derechos constitucionales fundamentales.[28]

**B.**

En nuestra jurisdicción, la obligación es el vínculo jurídico de carácter patrimonial en virtud de la cual el deudor tiene el deber de ejecutar una prestación que consiste en dar, hacer o no hacer algo en provecho del acreedor, quien, a su vez, tiene un derecho de crédito para exigir el cumplimiento.[29] En cuanto a la obligación de hacer, si la persona obligada a hacer una cosa no la hace o, si al hacerla contraviene el tenor de las obligaciones, la prestación se manda a ejecutar a costa del deudor. El acreedor puede exigir además que se deshaga lo mal hecho.[30]

---

[26] *Íd.*
[27] *Íd.*
[28] *Super Asphalt v. AFI y otros,* 206 DPR 803, 819 (2021); *Torres Rivera v. Policía de Puerto Rico,* 196 DPR 606, 628 (2016); *IFCO Recycling v. Aut. Desp. Sólidos,* 184 DPR 712, 744-745 (2012).
[29] Artículo 1060 del Código Civil de Puerto Rico, 31 LPRA sec. 8981.
[30] Artículo 1080 del Código Civil de Puerto Rico, 31 LPRA sec. 9015.

Por otro lado, el contrato es una de las fuentes de las obligaciones.[31] Este se define como el negocio jurídico bilateral por el cual dos o más partes expresan su consentimiento en la forma prevista por la ley, para crear, regular, modificar o extinguir obligaciones.[32] Una vez perfeccionado un contrato, sus disposiciones tienen fuerza de ley entre las partes, sus sucesores y ante terceros en la forma que dispone la ley.[33]

El Artículo 1367 del Código Civil de 2020[34] dispone que en el contrato de obra "el contratista se obliga, sin estar subordinado al comitente, a realizar una obra material o intelectual por el pago de un precio". Por tratarse el arrendamiento de obras de un contrato bilateral, consensual y oneroso, el incumplimiento de una parte le da derecho a la otra a resolver el contrato o a exigir su cumplimiento específico, más la indemnización por los daños y perjuicios causados.[35]

Respecto a la resolución del contrato, el Tribunal Supremo ha dicho que cuando nos enfrentamos a un incumplimiento parcial o defectuoso de una obligación bilateral, se justifica el ejercicio de la acción de resolución del contrato.[36] Es decir, el perjudicado en un contrato, puede exigir el cumplimiento de la obligación en la forma específicamente debida o la resolución de este, **solicitar el cumplimiento mediante la obtención del equivalente económico de la prestación debida** y, a la vez, pedir la

---

[31] Artículo 1063 del Código Civil de Puerto Rico, 31 LPRA sec. 8984.
[32] Artículo 1230 del Código Civil de Puerto Rico, 31 LPRA sec.9751.
[33] Artículo 1233 del Código Civil de Puerto Rico, 31 LPRA sec. 9754.
[34] 31 LPRA sec. 10251.
[35] Artículo 1255 del Código Civil de Puerto Rico, 31 LPRA sec. 9823; *Constructora Bauzá, Inc. v. García López,* 129 DPR 579, 592-593 (1991), resuelto durante la vigencia del Artículo 1077 Código Civil de 1930 (obligaciones recíprocas), 31 LPRA ant. sec. 3052.
[36] *Álvarez v. Rivera,* 165 DPR 1, 20 (2005), resuelto durante la vigencia del Artículo 1077 Código Civil de 1930 (obligaciones recíprocas), 31 LPRA ant. sec. 3052.

indemnización de daños y perjuicios resultantes de la repercusión del incumplimiento en su patrimonio.[37]

### III.

En su único señalamiento de error, la parte recurrente aduce que erró el foro administrativo al emitir una resolución parcial e incompleta, al concederle únicamente el valor de los materiales, sin considerar los gastos y daños y perjuicios reclamados. Además, solicita que ordenemos una "compensación integral por los daños materiales, estéticos y morales sufridos, así como los perjuicios derivados del tiempo transcurrido y de la tramitación administrativa deficiente".[38]

En el presente caso, el DACo determinó que el señor Alicea Rodríguez se obligó a la remoción e instalación de losas nuevas en la residencia de la señora Rivera Marrero. De igual manera, el DACo estableció que las partes pactaron el precio de las labores en $5,500.00, de los cuales, la señora Rivera Marrero pagó $4,000.00 al señor Alicea Rodríguez. También, según precisó el DACo, la señora Rivera Marrero pagó $4,583.11 por los materiales de la obra.

El DACo también determinó que los trabajos realizados por el señor Alicea Rodríguez fueron deficientes. Conforme surge de la resolución recurrida, el DACo, a la luz de la prueba presentada en la vista, así como de la totalidad del expediente administrativo, concluyó que la labor de la instalación de losas realizada por el señor Alicea Rodríguez fue defectuosa. Específicamente, de las determinaciones de hechos efectuadas por el foro administrativo se desprende que ninguna de las losas instaladas coincidía, una con otra, en las esquinas. El foro administrativo dio credibilidad a los hallazgos del informe del Sr. Nelson J. González Cruz presentado

---

[37] *Master Concrete Corp. v. Fraya, S.E.,* 152 DPR 616, 625 (2000), resuelto durante la vigencia del Artículo 1434 Código Civil de 1930 (contrato de arrendamiento de obras), 31 LPRA ant. sec. 4013.
[38] *Revisión de decisión administrativa,* SUMAC TA, Entrada 1.

por la recurrente, el cual detallaba que había losas huecas y que la mayoría de estas tenían escalones o desniveles. El DACo consignó, además, que luego de que a la señora Rivera Marrero se le cayó un envase de cristal en un área donde ya habían sido instaladas las losas, una de ellas se rompió dejando un orificio por el cual cabía el dedo de la recurrente.

Lo anterior demuestra que el señor Alicea Rodríguez no instaló las losas de una manera satisfactoria. Por ello, la señora Rivera Marrero tenía derecho a resolver el contrato o solicitar el cumplimiento mediante la obtención del equivalente económico de la prestación debida, más la indemnización de los daños y perjuicios sufridos.

El DACo determinó que la señora Rivera Marrero no presentó evidencia del costo de los accesorios y enseres dañados con moho. Sin embargo, a pesar de haberse solicitado en la querella y determinado como hecho probado que la señora Rivera Marrero pagó al señor Alicea Rodríguez la suma de $4,000.00 del precio pactado de $5,500.00 por las labores, la agencia nada dispuso en cuanto a la reclamación de reembolso por concepto de mano de obra. Ante la obligación de conceder lo que en derecho procede, concluimos que la agencia erró al no adjudicar la aludida petición de reembolso por concepto de los gastos de mano de obra incoada por la señora Rivera Marrero.

A tenor con la prueba presentada y las determinaciones de hecho del DACo, procede ordenar al señor Alicea Rodríguez que reembolse a la señora Rivera Marrero la suma de $4,000.00 pagada por concepto de mano de obra. Este es el remedio completo que procede, pues, a tenor con nuestro estado de derecho, el perjudicado en un contrato, puede exigir el cumplimiento de la obligación en la forma específicamente debida o la resolución de este o **solicitar el cumplimiento mediante la obtención del equivalente**

**económico de la prestación debida**. Los demás aspectos de la *Resolución* recurrida quedan confirmados.

Finalmente, puntualizamos que, vía revisión judicial de una determinación administrativa, no podemos reconocerle a la recurrente el derecho a solicitar como remedio una compensación en daños por el tiempo transcurrido en la tramitación del asunto a nivel administrativo. Ello debido a que, en un recurso de revisión de una determinación administrativa, nuestra facultad revisora se limita determinar si la actuación de la agencia está dentro de las facultades que le fueron conferidas por ley y si la misma es legal y razonable.

**IV.**

Por los fundamentos antes esbozados, *confirmamos* la *Resolución* recurrida y la *modificamos* a los únicos fines de ordenar que el señor Alicea Rodríguez le reembolse a la señora Rivera Marrero la suma de $4,000.00 pagada por concepto de mano de obra.

Notifíquese.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

La Jueza Cintrón Cintrón disiente sin opinión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones